13   461
130a   76

JAMES MASON *vs.* JONES and others, ex'rs, &c. of John Mason.

A testator having eight children, by his will divided his estate into eight equal parts, one of which he gave to his executors in trust, to hold, manage, and dispose of as in the will directed. Out of the income they were to pay the testator's son J. an annuity of $2500 for life, and accumulate the surplus for his children, &c. with "*full discretionary power to the trustees, and the survivors and survivor of them, to increase the annuity during his lifetime.*" Shortly after the death of the testator the trustees increased J.'s annuity to the full amount of the income of one-eighth of the estate; and subsequently they reduced it to $2500. *Held,* that the trustees had no power to reduce the annuity, either from the amount as fixed by the will, or from the amount as increased by them. MITCHELL, J. dissented.

*Held also,* that it was immaterial whether the trustees intended that the act

which they did should have the effect to give to J. the right to receive out of his father's estate an annuity to the amount of one-eighth of the net income of the estate *for life,* or only for the *half year* during which the increase was made. That it was sufficient that they did the act, and intended to do it; the testator having in effect declared that when the annuity should be increased, it should continue, not during the period which the trustees, in their discretion, should fix, but during the life of J

What amounts to a sufficient allegation, in a bill of complaint, that a testator made a will.

In Equity.] This was an appeal by the defendants from an order or decree made by the vice chancellor of the first circuit, on the 2d day of July, 1847. The case before the vice chancellor is reported in 4 Sandford's Chancery Reports, p. 623, where the facts are fully stated.

*M. S. Bidwell* and *D. Lord,* for the appellants.

*J. J. Ring,* for the plaintiff.

Edwards, J.  John Mason died on the 26th of September, 1839. At the time of his death, he was seised and possessed of a large real and personal estate. By his last will and testament he gave to his son James Mason, the plaintiff in this suit, an annuity of $2500 a year, to be paid in two equal installments, at the end of every six calendar months, from and after his decease, and to be continued during the life of the annuitant. By a subsequent provision in the will, he gave to three of the persons mentioned therein, as executors, and who were also thereby created trustees, full and discretionary power to increase the annuity during the lifetime of the annuitant, but not after his death.

On the 7th of April, 1840, the trustees addressed a note to the annuitant, which was in words as follows: "The executors under your father's will, in conformity with its provisions, made, on the twenty-sixth of March last, a division of the net income of his estate received to that day, and have placed in the name of the trustees, for your portion, the one-eighth of the same, which is now held by them, subject to your disposal. Will you,

Mason v. Jones.

by note, addressed to the Chemical Bank, inform them whether it is your pleasure to receive the amount thus placed to your credit, and if so, which mode will be most agreeable?" On the 25th of August, 1840, the trustees put in their answer to a bill in chancery, which had been filed before the vice chancellor of the first circuit, in which they alledge, "That under and by virtue of the full discretionary power in that behalf given to them, in and by said will, they have hitherto increased the annuity thereby given to the complainant," meaning the plaintiff in this suit. Upon this state of facts, the plaintiff insists that the trustees, in execution of the discretionary power given to them by the will, have increased his annuity to the amount of one-eighth of the net income of the estate; and asks that they may be compelled to account for and pay over the same. The trustees, on the contrary, insist that they have never permanently increased the annuity.

There is no doubt that there are certain powers which from their very nature admit of but a single execution; and it is equally well settled, by authority, there are other powers which can be executed partly at one time, and partly at another. In *Digges'* *case*, (*Coke's Rep.* 173,) a person had given by deed to Christopher Digges during his lifetime a power to revoke any of the uses or estates mentioned in the deed, and to limit new uses. It was held that he might revoke part at one time, and part at another, and so of the residue till he had revoked all. In the case of *Zouch* v. *Woolston*, (2 *Burr.* 1136,) a power was given to "settle jointures." The donee of the power, in execution thereof, made a settlement at the time of his marriage, and afterwards settled an additional jointure. Lord Mansfield in giving his opinion says, "the first point is, whether it be necessary that this power be executed all at once; or whether it may be executed at different times? It looks as if the drawer of the clause in the will, which gives this power, had it in view that it might be done at different times, and repeated more than once. For the words are that the husband shall have power from time to time during his life, by deed or deeds, writing or writings, to limit all or any part of the estate to any woman or women, that

shall be his wife, or wives, for and during their life or lives, and it has no meaning other than by applying those words to each respective wife that he might marry, and construing them to empower the husband to make different settlements upon the same wife. The power, in the case of *Harvey* v. *Harvey*, (*Barnardiston's Rep.* 103,) was in different words from those, and not as strong as these. The power there was to settle so much of the premises as should be of the yearly value of £603, for a jointure and provision for such wife, during her natural life. That was for *a* jointure, one specific and entire thing; not upon a wife or wives; not from time to time; nor by deed or deeds, writing or writings. It was then urged that the power was executed. The Lord Chancellor, Hardwicke, was clear that he might execute the power at different times; less than the whole at first, and then more." And in the case of *Doe* v. *Milbourne*, (2 *T. R.* 721,) Lord Kenyon says I agree with the argument at the bar that a power may be executed at different times, if not fully executed at first. These cases, which are the leading ones upon this point, while they establish the principle that certain powers may be executed at different times, also furnish an illustration of the manner in which the principle is applied.

In the letter which was sent to the plaintiff by the trustees on the 7th of April, 1840, they say that *under the will* of the plaintiff's father, and in *conformity with its provisions*, one-eighth of the net income has been placed at his disposal. It will be seen by reference to the will, that the only provision which authorized any such appropriation of the surplus income, was that which gave the trustees power to increase the annuity; and the act which they did they declared to be in execution of that provision. It was not necessary that they should say *in hæc verba* that the act done by them was an increase of the annuity, or was intended to be so, if such was its clear legal effect. In *Scrope's case*, (10 *Coke*, 143,) there was a power to determine certain uses, and it was held that although there was no express signification of the purpose or intention of the party to determine the uses, still that by the execution of a deed which was inconsistent with the continuance of the uses they

*ipso facto* ceased. But to remove all question as to the intent of the trustees in this case, they alledged in their answer to a bill in chancery, filed against them in another suit, that they had increased the annuities. And if I understood the counsel correctly upon the argument, they do not contend now that they did not, in that particular instance, increase the annuity for half a year. They say, however, that they did not intend to increase it beyond the half year to which the particular act applied. And, in order to test the claim set up by the trustees, I shall assume that they did not.

The will of the testator gives to the plaintiff an annuity of $2500 to be *continued during his life ;* and this is the annuity which the trustees have the power to increase. The testator himself has clearly and irrevocably fixed the period of its continuance. The discretion which was left to the trustees was to increase that estate, which the testator had made an estate for life. There can be no doubt, under the decisions which have been cited, that the trustees might have increased the annuity one hundred dollars at one time, and two hundred dollars at another, and have continued to increase it by successive acts, in execution of the power, until they had reached the limit prescribed by the will. But, could they do any thing more ? The power was undoubtedly divisible, and capable of being exercised at different times as regards the amount of the annuity, but is there any such divisibility as to the period of its continuance ? In the case of *Zouch* v. *Woolston*, and of *Harvey* v. *Harvey*, the court held simply that there might be successive settlements as to the amount of the jointure. But if the donee of the power had increased the jointure, could he by any act of his, either express or implied, have limited its continuance to any particular period of time less than for life ? It seems to me that he could not ; for a jointure is, *ex vi termini*, a life estate. (1 *Inst.* 36. 2 *Bl.* 134.) In the case before us the annuity is equally a life estate, for the testator has expressly declared that it shall be so.

But it has been suggested, that if a power is given to create an estate for life, an estate for twenty years may be created in pursuance of the power, and by a subsequent act an estate for

life may be created. Admitting this to be so; does it sustain the view which is here taken by the trustees ? It seems to me that the cases are not analogous. If the testator had invested the trustees with the power to give an annuity for life, it might perhaps be said that they could give an annuity for a term of years and afterwards give one for life. But such is not the power which has in fact been vested in the trustees. If I construe the will correctly they have been vested with no discretion as to time. The only allusion made to time is as to the time within which the power must be exercised. It must be exercised *during the life* of the annuitant. If I am correct in those views, it is immaterial whether the trustees intended that the act which they did should have the effect to give the plaintiff the right to receive out of his father's estate an annuity for life, equal to the amount of the income for the half year during which they increased the annuity. It is sufficient that they did the act, and intended to do it. The consequences are beyond the exercise of their discretion or control. They intended to increase the annuity, and the testator has in effect declared that when so increased it shall continue, not during the period which in their discretion the trustees shall fix, but during the life of the annuitant.

It is said, however, that the words *annual annuity of* $2500 *a year*, show that the testator intended to authorize the executors and trustees to increase the annual payments, and not to increase an annuity as that word is understood and defined in law, that is, an estate for life. It will be remarked that the words " annual" and " a year" are entirely superfluous. They express no more than is expressed by the single word annuity. And the provision that the annuity shall continue for life, shows that the superfluous words were used merely for the purpose of accurately defining the *amount* of the annuity.

But it is contended that the bill of complaint is defective in not alledging that the plaintiff made a will. It is a settled rule of equity pleading that the plaintiff must state all the facts necessary to show his right to recover. Several cases were cited on the argument, for the purpose of showing the manner in which this rule has been applied. In the case before us it will be ob-

Mason v. Jones.

served that every fact is stated which is necessary to show that there was a will. It is alledged that there was an instrument in writing purporting to be the last will and testament of John Mason deceased, and to be duly executed by him and attested as such; that the instrument was admitted to probate as a will of real and personal estate; that letters testamentary were issued, and that three of the persons named as executors qualified as such, and took upon themselves the burthen of the execution of the said instrument, and of the trusts therein contained. This is, in substance and effect, an allegation, not only that there is an instrument in writing purporting to be a will, and to be duly executed and attested as such, but that, by the decree of the proper court having jurisdiction in such matters, it has been adjudged and declared that there is a will. If all these allegations are admitted to be true, it cannot be said that it does not appear from the bill of complaint that there is a will.

I think that the decree of the vice chancellor should be affirmed, and a provision should be added for the purpose of carrying it into effect.

EDMONDS, J. concurred.

MITCHELL, J. John Mason died on 26th September, 1839, possessed of a large real and personal estate. For the purposes of this cause it must be assumed that he made the will annexed to the bill. The effect of that will, so far as the plaintiff is concerned, was to vest one-eighth of the testator's estate in Isaac Jones and two others, in trust to receive the income and out of it to pay to the plaintiff (in nearly the words of the will, omitting the parts relating to the other annuitants) " a clear annual annuity of $2500 a year,"—"said annuity to be paid in two equal installments a year, at the end of every six calendar months from and after the testator's decease, and to be continued during the lifetime of the before named annuitant." " And with regard to the said son, should he die leaving a widow surviving him, such widow shall be entitled to and I hereby give and bequeath to her the same annuity of $2500 a year, to be

paid to her in like semi-annual installments during the residue of her natural life." Then comes the following power as to increasing the annuities : " And I do hereby give to the before-named trustees and the survivors and survivor of them full *discretionary power to increase the said annuities* respectively *during the lifetime* of my said daughter Helen Alston, and my said three sons, John Mason, jun., James Mason and Henry Mason, but not after their respective deaths : and should the clear net income of the said trust fund exceed the said annuities, the surplus," in regard to the three several one-eighths in which three of the annuitants were interested, was to accumulate equally for the benefit of the children of Helen Alston, James Mason and Henry Mason respectively during their respective minorities, and to be paid to them respectively as they should attain the age of 21 years : and if either of said three annuitants had no issue, the surplus of the income, after satisfying the said annuities, was to be paid to Mary Jones, Rebecca Jones, George Jones or his children, Sarah Jones Hammersley and Mrs. Alston or her issue, and to the issue, if any, of James Mason and Henry Mason. On the death of James Mason, the one-eighth out of which his annuity arose was to go to his issue, if any ; if not, over to others named. The testator appointed his three sons-in-law and his two married daughters executors of his will ; but the sons-in-law alone qualified and acted. The daughters were not made trustees, nor were the trustees made such by the designation of *executors*, but by their individual names ; so that they held the trust as a distinct office and independent of the executorship. On the 7th of April, 1840, the persons thus designated wrote to the plaintiff the following letter :

" Dear Sir : The executors under your father's will, in conformity with its provisions, made (on the 26th of March last) a division of the net income of his estate received *to* that day, and have placed in the *name of the trustees* for your portion the one-eighth of the same, which is now held by them subject to your disposal. Will you by note addressed to the Chemical Bank, inform them whether it is your pleasure to receive the amount

Mason *v.* Jones.

thus placed to your credit, and if so which mode will be most agreeable." On the 26th May, 1840, the plaintiff, by his duly authorized attorney, received the above one-eighth, and gave the following receipt:

"Received, New-York, the 26th day of May, 1840, of Isaac Jones, George Jones and A. Gordon Hamersley, the trustees under the will of John Mason deceased, the sum of $1250, being the annuity for six months bequeathed to Mr. James Mason by the said will, and *also* the sum of $1008,15, being the balance after deducting the *said annuity* of the *one-eighth part* of the *net income* of the estate of the said John Mason received during the six months following his death and ending on the 26th March last; which moneys are paid to and received by me for Mr. James Mason, without prejudice to his claims upon the estate as one of the heirs at law and next of kin."

The defendants alledge in their answer, (which, as no replication is filed, is to be taken as true,) that they were led to allow the whole net income for that half year to the plaintiff, because he was in no employment, was living on a farm, and had contracted debts to a considerable amount, (of which he furnished them a schedule in part,) and they thought it proper to allow the surplus over the annuity that it might be applied to the payment of the then existing debts, so far as such surplus would avail; but that they did not then or at any after time intimate to him that any further sum would thereafter be paid beyond the annuity; and that from the present habits of life of the plaintiff, he would, in their opinion, be again laboring under the same embarrassments in pecuniary matters, and subject to the same annoyances from creditors as he now is, if he had been in the receipt of the whole income of the one-eighth since his father's death.

The plaintiff had formerly filed a bill before the vice chancellor of the first circuit for a different purpose, and these defendants answered it on the 25th of August, 1840. The plaintiff relies on that answer as a full exercise of the power, and as giving to him the whole income for life. The parts so relied on, and their connection, are as follows: "And these defendants, Isaac Jones,

George Jones and Andrew Gordon Hamersley, for themselves further separately severally say, that *they have* paid to the complainant his *annuity* of $2500 a year, bequeathed to him in and by the said last will and testament, *when and as the same* became due and payable, according to the true intent and meaning thereof; and that they are *ready and willing and hereby offer to pay the same* to him, when and as the same *shall become and be due* and payable, according to the true intent and meaning of the said last will and testament. And they further say, that under and by virtue of the full discretionary power on that behalf given to them in and by the said will, they *have hitherto* increased the *annuities* thereby given to *the complainant and* the said Henry Alston, John Mason, jun. and Henry Mason, respectively, to the extent of the one-eighth part to each of them, of the net income of the entire estate, both real and personal, of the said testator since his death, and taken from them respectively receipts therefor," with stipulations that the receipts should not prejudice their right to contest the validity of the will.

The bill carefully avoids any allegation that a will was made by the deceased, or that the defendants are executors, and does not even describe them either as trustees or executors; but it states that they presented for probate an instrument purporting to be such will and that it was admitted to probate, and letters testamentary granted to Isaac Jones, G. Jones and A. G. Hamersley, who qualified as executors and took on them "the execution of said instrument and the trusts therein contained;" and annexes a copy; and that they have collected and continue to collect the income of the estate, and have taken possession of the real and personal estate.

The bill shows that the defendants have paid the plaintiff no part of the income beyond the sum of $2500 per annum, except for the first half year, and claims that by the payment of the net income of one-eighth for that half year, and the declaration in the answer, the defendants have increased the annuity permanently, and are bound to account to the plaintiff for the whole of the net income of one-eighth beyond the $2500 per annum thus paid. It alledges other matters, which as they are not

Mason *v.* Jones.

proved, and are denied or sufficiently explained in the answer, are immaterial.

A great number of authorities were referred to on the argument, all of which have been carefully examined, but many of which it is unnecessary separately to notice.

Unquestionably there are cases in which a power admits only of a single execution, and then when once executed the power is exhausted. Such are the cases where an estate is not to vest in a woman until she marries with the consent of one or more persons named. From the nature of the act to be done by those persons, it is indivisible, it is incapable of being executed part at one time and part at another; on one single consent being given to one single act to be done by the woman the estate is to vest; the consent cannot be given as to part of a marriage, nor for a marriage for half a year or for a year, but it must be a consent for that which is to last during all the married life of the woman. All the cases of consent necessary to a marriage and which show the indivisibility of that consent may be passed by as not throwing any light on this subject.

But in all cases in which a power is capable in its nature of being divided and of being exercised more than once, it is held that it may be so divided and a part of the power exercised at one time and a part at another, and so on from time to time until the whole power has been actually used; and it is exhausted or completely executed only when it has been all used. If uses are created with a power of revocation of the uses and to declare new uses; this is a single power of revocation in this sense, that if it be once applied in revoking all the uses over the whole estate and declaring new ones, then the power is exhausted and it cannot again be applied unless the instrument of revocation contains a new power of revocation. But a power of revoking uses may be used at one time as to one piece of land or as to part of the estate granted, and at another time as to another. So, more clearly, is this divisibility of a power applied in other cases; and as the merits of the case turn on this point, it may be proper to state the authorities relating to it more fully. Sugden says, (vol. 1, p. 357,) " Powers of appointment and revocation need not be exe-

cuted to the utmost extent at once, but may be executed at different times, over different parts of the estate, or over the whole estate, but not to the full extent of the power. Digges' case is an authority that under a power of revocation, the uses of part of the land may be revoked at one time and of part at another, and so of the residue. So when a man has a general power of *appointment*, he may execute it at several times, and appoint an estate *for life* at one time, and the *fee* at another time. And the same of the power of revocation. So powers of *jointuring*, &c. may in like manner be executed at different times, provided that the party do not in all the executions exceed the limits of the power."

In none of these instances is it conjectured that the exercise of part of the power by one person carries also to the party in whose favor it is exercised all the estate that the donee of the power could have conferred if he had used his whole power, but the contrary is stated, when it is said that the powers may be exercised at different times. If the first partial exercise of the power carried to the beneficiary the benefit of a full exercise of the power, then the donee of the power could not exercise his power at different times, nor for different estates.

The master of the rolls says in *Alexander* v. *Alexander*, (2 *Ves. sen.* 642,) "Suppose one has a power to jointure a wife for life and appoint to her for ninety-nine years if she so long live, as in the case of Mr. Newport, at law it was held in B. R. void, but in equity good *pro tanto*, because he had *done less than his power*, and it clearly appears how much less ; the boundaries are clear and distinguishable ; if the wife should outlive the ninety-nine years, the estate as to the *residue of her life* will *be undisposed*, and will go to the remainderman, or other persons entitled. Now to put a case *vice versa ;* suppose a power to lease for twenty-one years and he leases for forty, that shall be good for the twenty-one, because it is a complete execution of the power, and it appears how much he has exceeded it. *If the court can see the boundaries it will be good* for the execution of the power, and void as to the excess."

One may then do less than his power, and all of the power

Mason v. Jones.

except that which was actually needed for what he did, still remains in him to be exercised by him or not, as he may determine.

In *Digges' case*, (1 *Coke*, 183, *b*,) Digges covenanted to stand seised of lands to certain uses, and reserved a power at any time to revoke any of the uses and to limit new ones; it is then resolved, that " he might revoke part at one time and part at another time, and so of the residue till he had revoked all. But he could revoke one part but once, unless he had a new power of revocation to the uses newly limited; for these words " at any time" amount to as much, and are equivalent as if he had said from time to time, as often as he shall think good. And if a man leases twenty acres of wood and grants that he may fell the timber trees at any time during the term, he may fell part at one time and part at another. So if a man devises that his executors shall sell his lands, they may sell part at one time and part at another."

This last illustration, which is one of every day's occurrence, shows that the words " at any time," although referred to by the court as strengthening their argument, is not essential to it; for in the power of sale to executors, these words are not added, yet unquestionably they may sell from time to time without these words or their equivalent. Whether the executors could sell at one time less than the whole title of the testator, or convey in any one piece of land a less estate than the testator had in it, would depend on the words of the will. But it is clear that if with a power to convey only in fee, they conveyed a *less* estate, the purchaser would not get the *fee;* he would get the less estate or nothing. So here if the executors only had power to make a permanent increase of the annuity to last during the plaintiff's life, and have increased it in form and intent only for six months, the legal effect of their act cannot be strained so as to give what the instrument, executed under the power, did not profess to give, but it would give only what that instrument professed to give, or if that be illegal, then nothing.

In *Zouch* v. *Woolston*, (2 *Burr*. 1143,) although the power related to the settling of a jointure which without enlarging words would from its nature seem to be merely one specific en-

tire thing, it was held that it might be executed at different times. Although counsel then argued that the power to settle the jointure by deed or deeds, and from time to time, was to be exercised only once if full for the *same wife*, and that the words from time to time, &c. were used to provide for a second or third wife, they admitted that if the husband in making the first appointment had declared it to be only in part of the jointure, or expressly reserved a power to add more, he might do so.

Lord Mansfield held the power could be executed at different times for the same wife; and he quoted *Harvey* v. *Harvey*, (*Barnard. Rep.* 103, 109,) when the power was to settle so much of the premises as should be of the yearly value of £603 for a jointure and provision for such wife *during her natural life.*" He remarks that "was for a jointure, one specific entire thing, yet the Lord Chancellor Hardwicke was clear that he might execute the power at *different times*,"—"less than the whole at first and then more." At p. 1148, he explains the case of *Hele* v. *Bond*, (*Prec. in Ch.* 474,) that the power there was to revoke uses and declare new ones; the party revoked the old uses and declared new ones; and it was held that this executed and exhausted his *whole* power, as he had not reserved in the last deed power to revoke these uses; but he adds, "Digges' case is in point; that a person, who has such a power of revocation may revoke part at *one time* and *part at another;* but not the same part twice unless he reserves a new power of revocation. He inferred from the fact that the power related by its express terms to all and every part of the estate, that it could not be necessary to be all done *uno flatu*, but might be executed at different times; and he adds, it is highly reasonable that it should be so; and the reasons are such as may have entered into the mind of the testator in this case; he says, "There may be cogent reasons to render it convenient, as children being more or less numerous; a wife's additional fortune, or her good behavior and merit, or many other circumstances of a family."

Lord Kenyon, in *Doe ex dem. Milborne*, v. *Milborne*, (2 *Durn. & East*, 725,) says: "I agree with the argument at the

bar, that a power may be executed at different times, if not fully executed at first, provided that the party in the whole execution do not transgress the limits of the power; as in *Zouch* v. *Woolston.*"

In this case, the testator, for reasons satisfactory to himself, and of which we know nothing, but which he, as the absolute owner of his own property, had a right to entertain and act upon in the disposition of his property, thought it prudent to give to four of his eight children, or to their representatives, each one-eighth of his estate in absolute ownership, and without any trustee to protect them. One other, from the state of his bodily and mental infirmities, as the testator states, needed a trustee, and trustees were appointed for him. For three others he also thought it proper to appoint trustees, and to give them certain discretionary power. This power is to be construed according to what the testator intended and declared, and not according to our views of what he ought to have done, or what we probably might have done. He has secured to the plaintiff $2500 per annum, for life, and the same annuity to the plaintiff's wife, if she survive her husband. This he must have regarded as *prima facie* enough, or he would have made the annuity larger; but to provide for a favorable change, when in the judgment of his trustees it should seem proper to increase this annuity, he adds the clause, " I do hereby give to the before named trustees, and the survivors and survivor of them, full discretionary power to increase the said annuities respectively, during the lifetime of my said daughter Helen Alston, and my said three sons, John Mason, jr. James Mason and Henry Mason, but not after their respective deaths."

This was a power that could be exercised from time to time, from its very nature. If, in the first year of their office, the trustees found it expedient to add only $100 to the $2500, they could do it. That would not exhaust their power, and they could in the following year add $200 to the $2500; and so they could proceed from year to year, continually increasing the annual payments, so long as the son should live. This power is to be inferred, not so much from any particular phraseology that

is used, as from the nature of the power and the purpose for which it was granted. It was granted because, in the judgment of the testator, the son for whose benefit and protection he created this power, needed such a protection. For the same reasons it must be inferred, also, that it was intended that this power, which was declared to be "full discretionary power," should, if the trustees deemed it wise, be executed for a limited time only. The son might be in great want of immediate relief, sickness might subject himself and wife to extraordinary expenses, and to this might be added the destruction of his property by fire, or other unavoidable calamity, or its loss by too much confidence in unworthy persons. These calamities might require large and immediate, but temporary relief; and so it would be according to the nature or object of the power to grant the relief for such period as would remove the present pressure. Still, the same causes which led the father to fix $2500 per annum, as the primary limit, might still exist, and make that sum alone proper, when the extraordinary pressure should be removed. The object of the testator would then be best accomplished by allowing the trustees to increase the annuity for a period to be limited by them, when exercising their power. If they could not thus limit the exercise of their power, prudence might require that they should not use it at all; and thus the intended benevolence of the father be frustrated by too narrow a construction of the power given by him. Thus, in the case before quoted, one having a power to lease for life, might lease for years, which in law is a less estate; and do this by virtue of his express power to lease for life; and the lease was good if the life lasted beyond it. So here, under the power to increase the annuity for life, is included the power to increase it for part of the life; and, especially, as in this case, for the *time past* only.

The question is not whether, if the trustees had once increased the annuity *for life*, they could afterwards diminish it; but, if having increased it for a limited period, and for that only, that necessarily makes the increase for life only, although the acts and instruments made or done under the power, show no intention to make the increase for life. Enough has been said to

Mason *v.* Jones.

show that no law favors such a perversion of the intention of one executing a power.

Have the trustees then, in fact, by any act of theirs, increased the annuity for the life of the plaintiff?

Although, in some conveyances under the common law, the intention of the parties, as sufficiently indicated on the face of the conveyance, is frustrated by technical rules of interpretation, yet it is the pride of the law that the intention so indicated should prevail in instruments operating under a power in trustees. This intention is to be gathered from the acts of the donee of the power, and his instruments declaring his intention, not from any secret motive concealed in his own bosom. What then do their writings and their acts show their intention to have been, and what have they done?

As soon as the first half year expired, after the testator's death, the executors ascertained that the income of one-eighth for that half year, exceeded the half of the annuity by $1008,15, and wrote to the plaintiff that the executors had made a division of the net income of the estate received to that day, (7th April, 1840,) and had placed in the name of the trustees, for his portion, the one-eighth of the same, which they say was then held by them, subject to his disposal. The income of which a division was made, was expressly limited to the part *received to that day*, and the part placed at his disposal was one-eighth of the same income received to that day only, (7th April, 1840.) By the express words, therefore, this was restricted to so much of the income as was received on the 7th of April, 1840; it had nothing to do with subsequent income. That was not then received; was not then placed in the name of the trustees, and was not at the plaintiff's disposal. This letter, then, so far as it shows any intention, shows an intention limited to what had then passed, and cannot affect subsequent transactions. The receipt given by the plaintiff, on the 26th of May, 1840, is of the same character; it is for one-eighth of the net income for six months, ending on the 26th of March, 1840. It is not, of course, a receipt for moneys to be received; but is of moneys received to that date. It shows, also, that the extra payment was under-

stood as an extra temporary payment, and not as forming with the $1250, one increased *annuity*. It is for "$1250, being the *annuity* for six months, bequeathed to Mr. James Mason, by the said will; *and also*, the sum of $1008,15, being the balance after deducting the said *annuity*, of the one-eighth part of the net income," &c. Thus, the $1250 is distinctly treated as the whole that was payable *as annuity*, and the $1008,15 as the balance of income, (*not an increased annuity*,) "after deducting the *said annuity*." These two papers do not aid the plaintiff. Neither does the statement in the defendant's answer to a former bill in chancery. Change the order of the sentences, and this is perfectly plain; it will then read, substantially, that by virtue of the full discretionary power given to them, they have hitherto increased the annuity to the extent of one-eighth of the income of the estate, and taken the receipt therefor. This states merely what they have *hitherto* done, (that is, before the 25th of August, 1840, when the answer was put in,) and makes in this place no intimation as to what they meant to do. It was stated, probably, to protect them in any accounting. But they do, in the part just preceding, state what they mean to do. There they say that they have paid to the plaintiff *his annuity of* $2500 a year as it became due, and that they are ready and willing, and *hereby offer* to pay the *same* to him, when and as the same shall become due and payable. If the declaration that they had *hitherto* paid, was uncertain, this precise offer prevents the possibilty of a doubt as to what they meant, by this answer, to say they would do. Speaking of the $2500 annuity, and of it only, they say they are *willing and offer* to pay the *same* to him as it shall become due. No recognized rule of interpretation can extend this offer beyond the annuity of $2500. And this distinct and express offer, must limit any remark, as to what they had done, so as not to make that remark, as to past conduct, an inference of an offer beyond the express and limited offer. Even in offers "*expressum facit cessare tacitum.*"

If the acts or intentions of the trustees were to be determined by what they said they had formerly done, the same conclusion must be drawn. For, as if they intended that no words should

escape their mouth without a cautious limitation accompanying them, they do not say they have increased the annuity, in general terms, but that "they have *hitherto* increased the annuities thereby given to the complainant," &c. This term "hitherto," qualifies and limits what otherwise might appear either general or uncertain, and restrains the increase to that period of time then elapsed, and prevents its reaching the future. When it occurs in that sublime passage from Job, "Hitherto shalt thou come, but no further, and here shall thy proud waves be stayed;" at first, is the command to reach the limited line, and then in amplification of the same idea, according to the usage in Hebrew poetry, it is added, "and no further, and here shall thy proud waves be stayed." But if, instead of the first being a command, it was a permission merely, or, as in this case, a *power* only, and it was "hitherto *mayest* thou come," then the addition "but no further," would be not an amplification of the former idea, but only a repetition of the same idea. Thus, "hitherto we have paid," so far from implying that we will hereafter pay, is a reservation as to what we will hereafter do. But according to the plaintiff's interpretation of "hitherto," that would necessarily imply, hitherto shalt thou come, *and further also ;* which would make the first part of the sentence, by its implied meaning, contradict the express words of the latter part.

On the merits, therefore, the decree should be reversed, and the bill be dismissed.

The defendants also object that the plaintiff has shown no title in himself, he not alledging that there is any will. His whole claim in this action falls to the ground, if there is no will, and the defendants are not trustees under it. This objection was raised in the answer as well as on the argument. The answer made to this is, that the defendants having propounded the will as a will, and proved it as such and acted under it as such, and in that right received the income, are estopped from denying the validity of the will. That they would be estopped by these acts as matters *in pais* may be true ; but those estoppels arise, as the name indicates, on the trial, and do not control the rules of

pleading.   If the defendants were so estopped, then the plaintiff should have alledged the validity of the will, and if he apprehended that the defendants would deny it, then he could have set up these acts by way of estoppel of such defense.   But a plaintiff must always show his own title, and when a defendant owes him a duty by virtue of a deed, will, or other instrument, he must alledge the due execution of that instrument, and connect himself and the defendant as both deriving title under it.   Those facts on which his title depends must be stated positively, and not be left to conjecture.   Thus, if he seeks relief as a judgment creditor on account of property not to be reached at law, then he must alledge that there is such property and that the execution has been returned unsatisfied : if on account of property liable to an execution, he must alledge that there were such goods and that his execution is outstanding, but for some fraud on the part of the defendant, cannot reach the goods : (*McElwain* v. *Willis*, 9 *Wend* 548, 561 :) if to restrain a defendant from setting up outstanding terms, he must alledge that there are such terms outstanding.   (*Story's Eq. Pl.* § 239.)   And if a bill be filed against executors, not charging any misconduct, no relief can be given, even if the answer admit misconduct; for the relief must be founded on the allegation in the bill, not merely on the case made by the answer or proofs.   (*Story's Eq. Pl.* § 264.)

He who depends on an estoppel in pais, must show that he is injured if the estoppel be not sustained; and he who depends on a technical estoppel must show that it is mutual, binding him as well as the opposite party.   In all these respects the plaintiff has failed.   After a decision shall be made here, he can turn round and say his bill was not founded on the will, and alledge that his father died intestate, and claim one-eighth of the land as heir at law and the rents and profits of the whole one eighth.   The objection therefore is a material one, and should prevail against the plaintiff.

It was argued that the thing devised was an annuity and not annual payments, and that the thing to be increased by the power was an annuity and not annual payments.   It is plain that the word annuity was not used in a technical sense; but it

was part of the conveyancer's repetition or the anxious desire to show that the payment was to be every year and not of one sum only : thus he gives a clear *annual annuity* of $2500 *a year :* not only is it an annuity, but it is annual and a year. Thus the same idea of annual payment is three times expressed in one short sentence. The annuity of the old common law is an inheritable estate. That peculiar title was not intended to be created ; and if it had been, it would not alter the divisible nature of the power.

The decree should be reversed and the bill be dismissed with costs.

Decree affirmed.

[NEW-YORK GENERAL TERM, June 11, 1852. *Edwards, Mitchell* and *Edmonds,* Justices.]