George H. Tilden, Respondent, *v.* Andrew H. Green et al., as Executors, etc., et al., Appellants.

| | |
|---|---|
| 130 | 29 |
| 140 | 43 |
| 130 | 29 |
| 147 | 109 |
| 130 | 29 |
| 154 | 212 |
| 130 | 29 |
| 161 | 137 |
| 161 | 140 |

*It seems*, that a valid devise or bequest may be limited to a corporation to be created after the death of the testator, provided it is to be and is called into being within the time allowed for the vesting of future estates.

A certain designated beneficiary is essential to the creation of a valid testamentary trust, and a trust without a beneficiary who can claim its enforcement is void.

The objection is not obviated by the creation of a power in the trustees to select a beneficiary, unless the class of persons in whose favor the power may be exercised has been designated by the testator with such certainty that the court can ascertain the object or objects of the power.

So also, while under the Statute of Powers there may be a power of selection or exclusion with regard to the designated objects, the power of selection must be so defined that there are persons who can come into court and say they are embraced within the class, and demand the enforcement of the power.

The English doctrine of *cy pres*, which upholds gifts for charitable purposes when no beneficiary is named, has no place in the jurisprudence of this state.

The rule that where several trusts are created by a will, which are independent of and separable from each other, and each complete in itself, some of which are lawful and others unlawful, the illegal trusts may be cut off and the legal ones permitted to stand, can be applied only in aid and assistance of the manifest intent of the testator and never where it would lead to a result contrary to the purpose of the will, or work injustice among the beneficiaries, or defeat the testator's scheme for the disposal of his property.

When, therefore, the trusts are so connected as to constitute an entire scheme, so that the presumed wishes of the testator would be defeated if one portion were retained and others rejected, or if manifest injustice would result from such rejection to the beneficiaries, or some of them, then all the trusts must be construed together and all must be held illegal.

While, in the construction of a will, the court must so construe its provisions as to effectuate the general intent of the testator as expressed in the whole instrument, and while for this purpose words and phrases may be transposed and its provisions read in an order different from that in which they appear in the instrument, and provisions may be inserted or left out if necessary, this can only be done in aid of the testator's intent and purpose and not to devise a new scheme or to make a new will.

The will of T. gave his residuary estate to his executors as trustees, and to their successors in the trust thereby created, "to have and to hold the same

Statement of case.

* * * during a period not exceeding two lives in being," which were: named and "to apply the same and the proceeds thereof to the objects and purposes mentioned" in the will. Those objects and purposes were: specified in a clause by which said trustees were requested to procure the: incorporation of an institution "with capacity to establish and maintain a free library and reading-room in the city of New York, and to promote such scientific and educational purposes" as they should designate. In case such institution was incorporated during the life-time of the survivor of the two lives specified, the trustees were authorized to convey and apply to its use said residuary estate, "or so much thereof as they may deem expedient." In case the institution should not be incorporated during the period limited, ".or if for any cause or reason" said trustees "shall deem it inexpedient" to so convey or apply said residue, "or any part thereof," they were authorized to apply the whole or such portion thereof as was not so applied "to such charitable educational purposes" as in their judgment would render it "most widely and substantially beneficial to mankind." In an action brought to obtain a construction of the will, *held* (BRADLEY, POTTER and VANN, JJ., dissenting), that the trust so sought to be created was invalid because of indefiniteness and uncertainty in its objects and purposes, and because it substitutes for the will of the testator that of the trustees and makes that controlling in the disposition of the trust fund; that the power conferred upon the trustees was imperative but not valid because not enforceable at the suit of any beneficiary ; that the clauses in question could not be upheld as constituting primarily a separate trust or power in trust for the benefit of the institution, with an alternative ulterior provision to be effectual only in case the executors deemed it inexpedient to apply the residue to the corporation; that there was but a single indivisible scheme, *i. e.*, a gift to charitable uses, with a suggestion of or an expression of a preference for the institution as an instrument to execute the donor's purpose, leaving the choice to the executors; no preferential right to the estate, or any part of it being conferred upon the institution.

The executors caused an institution to be incorporated and organized as desired by the will, and conveyed to it the residuary estate. *Held*, that this had no bearing upon the question as to the validity of the provision, and did not affect the rights of the heirs and next of kin.

*Inglis* v. *Trustees, etc., Sailors' Snug Harbour* (3 Pet. 99); *Burrill* v. *Boardman* (43 N. Y. 254), distinguished.

Reported below, 54 Hun, 231.

(Argued June 2, 1891; decided October 27, 1891.)

APPEAL from judgment of the General Term of the Supreme Court in the first judicial department entered upon an order

made November 19, 1890, which modified, and affirmed as modified, a judgment in favor of plaintiff entered upon a decision of the court on trial at Special Term.

The nature of the action and the facts, so far as material, are stated in the opinion.

*James C. Carter* for appellants. This case is that of a gift, not to charitable objects, or purposes, or classes of persons, natural or artificial, but to one artificial person, a corporate body, named the "Tilden Trust," fully competent by its charter to take the bequest. The validity of such a disposition of property is not open to debate. Every question which can reasonably be made concerning it, has been determined by this court, in favor of the disposition. (*Burrill* v. *Boardman*, 43 N. Y. 254; *Schettler* v. *Smith*, 41 id. 328; *Manice* v. *Manice*, 43 id. 303; *Savage* v. *Burnham*, 17 id. 561; *Kennedy* v. *Noy*, 105 id. 134; *Adams* v. *Perry*, 43 id. 487; *Selden* v. *Vermilyea*, 1 Barb. 58.) It is insisted that an exercise of discretion by the executors in favor of the Tilden Trust, was a condition precedent to the vesting of the gift; and, consequently, that until that discretion was exercised the Tilden Trust could not procure a judicial decree enforcing the gift, and the gift was thus rendered void. This is untenable. (1 R. S. §§ 73, 74; *Hartnell* v. *Wendell*, 60 N. Y. 849; *Beekman* v. *Bonsor*, 23 id. 298; *Powers* v. *Cassidy*, 79 id. 602; Perry on Trusts, § 248; *Holmes* v. *Mead*, 52 N. Y. 332.) The title of the Tilden Trust to the gift vested immediately upon the granting of the charter, subject, however, to the condition subsequent that it might be defeated by the conclusion of the executors that it was inexpedient to convey anything to that body, or the amount of the provision cut down by their conclusion that it would be inexpedient to convey the whole residue. (*Brown* v. *Higgs*, 5 Ves. 495; Jarman on Wills, 683; 2 Williams on Ex. 1105, 1132; *Crozier* v. *Bray*, 120 N. Y. 366; 2 Redf. on Wills, 627; Hill on Trustees, 490–492; *Wainwright* v. *Waterman*, 1 Ves. 311; *Keates* v. *Burton*, 14 id. 434; *French* v. *Davidson*, 3 Madd. 396; *Lansing* v. *Sheratt*, 2 Hare, 14; *Bradford* v.

*Willis,* L. R. [12 Eq. Cas.] 105.) The bequest to the Tilden Trust was certain and definite, and, therefore, valid. (*Wager* v. *Wager,* 96 N. Y. 172; *Roe* v. *Vingut,* 117 id. 204; *Greene* v. *Greene,* 36 N. Y. S. R. 30; Perry on Trusts, § 511; *Aleyn* v. *Belchier,* 1 L. C. Eq. 304; *Jackson* v. *Sill,* 11 Johns. 201, 216; *Roseboom* v. *Roseboom,* 8 N. Y. 356; *Freeman* v. *Coit,* 96 id. 63.) The power bestowed upon the executors to make endowment to, or withhold it from, the Tilden Trust corporation, is a trust power, because it is for the benefit of other persons than the grantees of the power. It is, however, not an imperative one, but one expressly depending upon the will of the grantees within the meaning of section 96 of the article of the Revised Statutes upon Powers. (R. S. §§ 97, 100.) The corporation actually chartered by the legislature under the name of the " Tilden Trust " is the very corporation described by the testator, and its title to the residue is perfect. (*Pond* v. *Berg,* 10 Paige, 140, 152; *Chapman* v. *Broden,* 3 Burr, 1626; *Schettler* v. *Smith,* 41 N. Y. 328, 341; *Savage* v. *Burnham,* 17 id. 561, 576, 577; *Phillips* v. *Davies,* 92 id. 199; *Post* v. *Hoever,* 33 id. 593; Perry on Trusts, § 709; Jarman on Wills, chap. 16.) The arguments that the testator intended to convey his residue to his executors and trustees in trust, that by the Revised Statutes no trust is permitted for the purposes for which the trust was attempted to be created, and that the purposes cannot be accomplished under a power, for the reason that a power cannot exist where a trust is intended, finds no support in our law. (*Downing* v. *Marshall,* 23 N. Y. 336; *Selden* v. *Vermilyea,* 1 Barb. 58; *Brown* v. *Wilbur,* 8 Wend. 661; *Hotchkiss* v. *Elting,* 36 Barb. 44; *Fellows* v. *Heermans,* 4 Lans. 230; *In re McLoughlin,* 2 Brad. 107; *Fowler* v. *Depau,* 26 Barb. 224; *Hutchings* v. *Baldwin,* 7 Bosw. 236; *Martin* v. *Martin,* 43 Barb. 172; *Lang* v. *Ropke,* 5 Sandf. 363; *Everitt* v. *Everitt,* 29 N. Y. 39.) The precise legal description of the disposition made in favor of the Tilden Trust, is that it is an executory devise and bequest. (*Beardsley* v. *Hotchkiss,* 96 N. Y. 201, 213; 1 Jarman on Wills, 734.)

The objection that the bequest is void as transcending our statutes against perpetuities is not tenable. (*Manice* v. *Manice*, 43 N. Y. 303 ; *Dubois* v. *Ray*, 35 id. 165.) The employment of the discretion of designated persons, whether in determining those who are, in the future, to take the property, or the amounts which they are to take, is not in the slightest degree inconsistent with the certainty required in the transfer of property. (1 Jarman on Wills, 307 ; 1 R. S. 734, § 99 ; *Powers* v. *Cassidy*, 79 N. Y. 602 ; *Pritchard* v. *Thompson*, 95 id. 76 ; *Holland* v. *Alcock*, 100 id. 312 ; Lewin on Trusts, 524–526, 536, 538–544, 693–709 ; Perry of Trusts, chap. 8, §§ 508–512 ; *Harding* v. *Glyn*, 3 L. C. Eq. 789, 805 ; 2 R. S. §§ 24–34, 58, 92, 94, 95, 96, 97, 99, 100, 103, 104 ; *Holmes* v. *Mead*, 52 N. Y. 332 ; *Gilman* v. *McArdle*, 99 id. 451 ; *Coleman* v. *Beach*, 97 id. 545 ; *Delaney* v. *McCormack*, 88 id. 174 ; Perry on Trusts, §§ 250, 252 ; *Read* v. *Williams*, 35 N. Y. S. R. 909.)

*Daniel G. Rollins* for appellants. If the testator's provision in favor of the Tilden Trust would be valid and legal standing by itself, its legality and validity are in nowise impaired by the fact that the ulterior direction of article 35 in favor of certain charitable, educational and scientific purposes is invalid and ineffectual. (*Smith* v. *Bell*, 6 Pet. 68 ; *Wager* v. *Wager*, 96 N. Y. 164 ; *Winter* v. *Perratt*, 6 M. & G. 359 ; *Sorresby* v. *Hollins*, 9 Mod. 221 ; *Atty.-Gen.* v. *Lonsdale*, 1 Sim. 105 ; *Salusbury* v. *Denton*, 3 K. & J. 529 ; *Carter* v. *Green*, 3 id. 591 ; *Lewis* v. *Allenby*, L. R. [10 Eq.] 668 ; *Wilkinson* v. *Barber*, 14 id. 96 ; *Morley* v. *Croxon*, L. R. [8 Ch. Div.] 156 ; *Atty.-Gen.* v. *Mill*, 3 Russ. 328 ; *Atty.-Gen.* v. *Whitchurch*, 3 Ves. 140 ; *Dent* v. *Allcroft*, 30 Beav. 335 ; *Curtis* v. *Hutton*, 14 Ves. 359 ; *Manice* v. *Manice*, 43 N. Y. 303 ; *Savage* v. *Burnham*, 17 id. 561 ; *Webster* v. *Morris*, 66 Wis. 366 ; *Van Schuyler* v. *Mulford*, 59 N. Y. 426 ; *Jennings* v. *Conboy*, 73 id. 236 ; *Oxley* v. *Lane*, 35 id. 340 ; *Woodgate* v. *Fleet*, 44 id. 1, 21 ; *Hawley* v. *James*, 5 Paige, 358, 459 ; *Jackson* v. *Phillips*, 14 Allen, 539, 556 ;

*Doe* v. *Aldridge*, 4 T. R. 264; *Inglis* v. *Sailors' Snug Harbor*, 3 Pet. 99; *Palms* v. *Palms*, 13 West. Rep. 125; *Weeks* v. *Cornwall*, 104 N. Y. 325, 337; *Drew* v. *Wakefield*, 54 Me. 297; *Harrison* v. *Harrison*, 36 N. Y. 543; *Adams* v. *Perry*, 43 id. 487; *Pickering* v. *Shotwell*, 10 Penn. St. 23; *Dunlap* v. *Harrison*, 14 Grat. 251; *Darling* v. *Rogers*, 22 Wend. 483; *Hill* v. *Bowman*, 7 Leigh, 650.) The provisions for the Tilden Trust should receive precisely the same interpretation that would be accorded to them if the alternative provisions for indefinite charities formed no part of the will. And thus interpreted they are legal and valid. (*Powers* v. *Cassidy*, 79 N. Y. 602.) The testator's provision in favor of the Tilden Trust is not void for indefiniteness of subject, and the grant of discretion to the executors as regards the *quantum* of the estate to be applied by them to the Tilden Trust is legal and valid. (*Harnett* v. *Wendell*, 60 N. Y. 349; *Beekman* v. *Bonsor*, 23 id. 298; *Hawley* v. *James*, 5 Paige, 318; *Pink* v. *DeThinsey*, 2 Madd. 157; *Murdock* v. *Ward*, 8 Hun, 9; *French* v. *Davidson*, 3 Madd. 396; *Walker* v. *Walker*, 5 id. 424; *Mason* v. *Jones*, 4 Sandf. Ch. 623; 13 Barb. 461; *Colton* v. *Colton*, 127 U. S. 300; *Morton* v. *Southgate*, 28 Me. 41; *McLean* v. *McLean*, 3 Hun, 395; 62 N. Y. 627; *Steele* v. *Levisay*, 11 Grat. 454; *Fertham* v. *Turner*, 23 L. T. 345; *Bacon* v. *Bacon*, 55 Vt. 243; *McLean* v. *Freeman*, 9 Hun, 246; *Dickerman* v. *Dickerman*, 34 id. 585; *Kane* v. *Astor's Exrs.*, 9 N. Y. 113; *Thomas* v. *Pardee*, 12 Hun, 151; *Delany* v. *Delany*, L. R. [15 Ch. Div.] 55; *Eaton* v. *Smith*, 2 Beav. 236; *Haydel* v. *Hurck*, 72 Mo. 253; *Wells* v. *Wells*, 88 N. Y. 323; *Loring* v. *Marsh*, 6 Wall. 337; *Hoffman* v. *Van Syckel*, 12 Cent. Rep. 575; *Attenborough* v. *Attenborough*, 1 K. & J. 296.) Though the testator may have failed to create a valid trust in favor of the Tilden Trust within the limitations of the statutes of this state, his provision for that corporation must nevertheless be upheld as a power in trust, lawful and valid under our law, which power in trust is made expressly to depend on the will of the grantees and is, therefore, not imperative. (2 R. S. chap. 1, §§ 45, 58, 74, 76, 77, 78, 95; 1 Perry on Trusts,

§ 253; *Lines* v. *Darden*, 5 Fla. 51.)  The provision for the
Tilden Trust is valid independently of the question whether
the entire residuary estate vested in that object upon the legis-
lative grant of the charter "in form and manner satisfactory
to my (his) executors," (subject to be divested by the exercise
of the power with which the executors were clothed), or
whether, on the other hand, the determination of the execu-
tors on the question of the expediency of withholding all or
part of the residue from the Tilden Trust was a condition pre-
cedent to the vesting of the residue, or of any portion of it,
in that corporation. (*Shipman* v. *Rollins*, 98 N. Y. 311;
*Ould* v. *W. Hospital*, 95 U. S. 311; *Inglis* v. *Sailors' Snug
Harbor*, 3 Pet. 99; *Kinnaird* v. *Miller*, 25 Grat. 107; *Coit*
v. *Comstock*, 51 Conn. 352; *Miller* v. *Chittenden*, 2 Iowa, 315;
*McIntyre* v. *Zanesville*, 9 Ohio, 203; *Fured* v. *Dawson*, 10
Leigh, 147; *Russell* v. *Allen*, 107 U. S. 163; *Jones* v. *Haber-
shane*, 107 id. 174; *Dodge* v. *Williams*, 46 Wis. 70; *Vidal* v.
*Girard*, 2 How. [U. S.] 127.)  It is sufficient that the testator
clearly indicated by his will that upon the fulfillment, within
two specified lives in being, of all the conditions upon which
he limited his provisions for the Tilden Trust, that corporation
should take his residuary estate and that, since his death and
in the life-time of Ruby S. Tilden, all those conditions have,
in fact, been fulfilled.  (2 R. S. art. 1, § 10; *Inglis* v. *Sailors'
Snug Harbor*, 3 Pet. 99; *Ould* v. *W. Hospital*, 95 U. S. 303;
*Holmes* v. *Mead*, 52 N. Y. 332.)  The provision for the
Tilden Trust is not invalid by reason of the discretionary
authority which it gives to the executors in determining the
character of the scientific and educational objects to be pro-
moted by that corporation.  (*Beaumont* v. *Oliveira*, L. R. [4
Ch. App.] 309;  U. S. R. S. 1836, 1846.)  The provision for the
Tilden Trust does not unlawfully suspend the power of aliena-
tion.  (*Burrill* v. *Boardman*, 43 N. Y. 254; *Watkins* v. *Rey-
nolds*, 123 id. 211; *Booth* v. *Baptist Church*, 37 N. Y. S. R. 79.)

*George F. Comstock* for appellants.  The will of Samuel J.
Tilden vested the fee of the estate devised to the Tilden Trust,

as a contingent remainder, as an executory devise, and as a conditional limitation, but whether it takes the property devised as real or as personal estate has no significance. (1 R. S. art. 1, §§ 14, 15, 24, 45, 47, 48, 49; Code Civ. Pro. §§ 484, 3333; *Alcock* v. *Holland,* 108 N. Y. 312; *Downing* v. *Marshall,* 23 id. 366; *Holmes* v. *Mead,* 52 id. 356; *Burrill* v. *Boardman,* 43 id. 263; R. S. §§ 24, 25, 32, 34, 45–72; *Schettler* v. *Smith,* 41 N. Y. 328; *In re Bullard,* 96 id. 499; 2 Black. Comm. 263; 8 Henry, chap. 10; *Gilman* v. *Redington,* 24 N. Y. 9; Fearne on Remainders, 526; *Wendell* v. *Crandall,* 1 N. Y. 491; *Nellis* v. *Nellis,* 99 id. 505; Const. art. 8, § 1; 4 Kent's Comm. 9.)

*Joseph H. Choate, Smith M. Weed* and *William V. Rowe* for respondent. The charitable scheme attempted by the will is void for indefiniteness and uncertainty, in respect both to the object and the subject. (*Van Kleeck* v. *Dutch Church,* 20 Wend. 471; *Van Nostrand* v. *Moore,* 52 N. Y. 12; *Kiah* v. *Grenier,* 56 id. 220.) The trust attempted to be created by the thirty-ninth article, to apply the residuary estate to the objects and purposes mentioned in the thirty-fifth article, is void by the laws of New York. Because of the absence of a beneficiary, defined by the testator, entitled to enforce its execution. The fact that the trustees are competent and willing to execute it, and have attempted to execute it, does not validate it. (*Holland* v. *Alcock,* 108 N. Y. 322, 323; *Read* v. *Williams,* 35 id. 909, 911, 912; *In re Jarman,* L. R. [8 Ch. Div.] 584.) The existence of an intent that the heirs and next of kin should take nothing beyond specific gifts, is of no consequence. (*Van Kleeck* v. *Dutch Church,* 20 Wend. 469; *Haxtun* v. *Corse,* 2 Barb. Ch. 500; *Chamberlain* v. *Taylor,* 105 N. Y. 192.) The decisions of this court are conclusive against the validity of these provisions of the will. The court cannot sustain the trust attempted. (*Holland* v. *Alcock,* 108 N. Y. 312; *Pritchard* v. *Thompson,* 95 id. 76; *Read* v. *Williams,* 35 N. Y. S. R. 909; *In re O'Hara,* 95 N. Y. 418; *Willetts* v. *Willetts,* 103 id. 650; *Levy* v. *Levy,* 33 id. 97;

*Bascom* v. *Albertson*, 34 id. 584; 2 Perry on Trusts, § 508; *Lawrence* v. *Cooke*, 104 N. Y. 630; *Phillips* v. *Phillips*, 112 id. 197; 2 Story's Eq. Juris. § 1070.) There can be no such optional or alternative power vested in trustees, to give to indefinite or definite objects, wholly at their discretion and election. The power or trust is thereby rendered unenforceable and consequently void. (1 Jarman on Wills, 214; *Mitford* v. *Reynolds*, 1 Phil. 185; *Nash* v. *Morley*, 5 Beav. 177; *Fowler* v. *Garlike*, 1 R. & M. 232; *Nichols* v. *Allen*, 130 Mass. 211, 212; *In re Jarman*, L. R. [8 Ch. Div.] 584, 587; *Norris* v. *Thompson*, 4 C. E. Green, 507; 5 id. 489; *James* v. *Allen*, 3 Mer. 17; *Vesey* v. *Janson*, 1 Sim. & Stu. 69; *Williams* v. *Kershaw*, 5 L. J. [N. S.] Ch. 84; 5 Cl. & Fin. 111; *Ellis* v. *Selby*, 1 Myl. & Cr. 286; *Kendall* v. *Granger*, 5 Beav. 300, 302; *Thompson* v. *Thompson*, 1 Colby, 398; *Chamberlain* v. *Stearns*, 111 Mass. 267; *Holland* v. *Alcock*, 108 N. Y. 323; *Morice* v. *Durham*, 9 Ves. 399; *Ommany* v. *Butcher*, T. & R. 260; *Thompson* v. *Shakespear*, 1 DeG., F. & J. 399; *Read* v. *Williams*, 36 N. Y. S. R. 911.) Under the Statute of Powers, and under general principles, the uncertainty as to the beneficiaries is fatal to its validity as a power. Even if this were not so, it is clear that such an undefined general power is in contravention of the Statute of Wills, and, therefore, void. (1 R. S. 729, § 58; *Holland* v. *Alcock*, 108 N. Y. 321; *Read* v. *Williams*, 35 N. Y. S. R. 909; *Bristol* v. *Bristol*, 53 Conn. 242, 254, 255; *Maught* v. *Getzendanner*, 65 Md. 527, 533; *Dulany* v. *Middleton*, 72 id. 67; *In re O'Hara*, 95 N. Y. 418.) Where the testator has plainly contrived a trust, and conveyed his property to his trustees in trust, not merely for a purpose which, however lawful, is not enumerated in the statute, but for an unlawful purpose, for a purpose prohibited by statute, or contravening a settled rule of law, or the fundamental policy of the law, it is not possible to maintain it as a power in trust. (*Garvey* v. *McDevitt*, 11 Hun, 409; 72 N. Y. 562.) This is not a mere discretionary power to appoint or not to appoint. (2 Perry on Trusts, § 508; *Lawrence* v. *Cooke*, 104 N. Y.

638.) By treating the provisions of the will as if they were in favor of private persons instead of charities, precisely the same result is reached. (*Prichard* v. *Thompson*, 95 N. Y. 81; 2 Perry on Trusts, § 508; *Lawrence* v. *Cooke*, 104 N. Y. 638.) Article 3, of title 2, chapter 1 of 2 Revised Statutes is conclusive of the question, even apart from the foregoing considerations arising out of the Statute of Wills. (2 R. S. chap. 1, art 3, §§ 95, 96, 97, 98, 99, 100, 101; 35 N. Y. S. R. 911; 27 id. 505.) The charter of the Tilden Trust does not conform to the will. It is not the corporation contrived and intended by the testator. Therefore, even though the will should be held valid, this defendant corporation cannot take title to the property. (*Vaux's Appeal*, 109 Penn. St. 497.)

*Delos McCurdy* for respondent. By the thirty-fifth clause of the will, an attempt is made to create a trust to depend for its execution — for its validity or invalidity — upon the mere exercise of the will of the executors and trustees. No trust can be created or sustained in this state which depends upon the exercise by the trustee of an election whether he will or will not execute the alleged trust. The discretionary power in the trustees to give or withhold is incompatible with the existence of a valid trust. (*Holland* v. *Alcock*, 108 N. Y. 312, 323; *Maddison* v. *Andrew*, 1 Ves. 60; *Alexander* v. *Alexander*, 2 id. 640; *Kemp* v. *Kemp*, 5 id. 849; *Keats* v. *Burton*, 14 id. 437; 2 Sugden on Powers, 190; *Gower* v. *Mainwaring*, 2 Ves. 88; *Brereton* v. *Brereton*, Id. 88; *Potter* v. *Chapman*, Amb. 998; *Lee* v. *Young*, 2 Y. & C. 532; *Caplin's Will*, 11 Jur. [N. S.] 383; *Prendergrast* v. *Prendergrast*, 3 H. L. Cas. 195; *Coe's Trusts*, 4 K. & J. 199; 2 Perry on Trusts, § 510; Hill on Trustees, 101; *Morice* v. *Bishop of Durham*, 10 Ves. 536; *Ommaney* v. *Butcher*, T. & R. 270; *Gibbs* v. *Rumsey*, 2 V. & B. 297; *Bull* v. *Vardy*, 1 Ves. 270; *Levy* v. *Levy*, 33 N. Y. 104; *Dillaye* v. *Greenough*, 45 id. 445; *Power* v. *Cassidy*, 79 id. 602; *Prichard* v. *Thompson*, 95 id. 81, 82; *In re O'Hara*, Id. 418, 419.) The trust attempted to be created cannot be upheld as a trust for charity by the applica-

tion of the law relating to charitable uses. The doctrine of charitable uses does not prevail in this state. (*Holmes* v. *Meade*, 52 N. Y. 232; *Yates* v. *Yates*, 9 Barb. 324, 341; *Ayers* v. *Meth. Church, etc.*, 3 Sandf. 351; *Levy* v. *Levy*, 33 N. Y. 97; *Bascom* v. *Albertson*, 34 id. 584; *Adams* v. *Perry*, 43 id. 487; *Holland* v. *Alcock*, 108 id. 312.) The devise and bequest in the thirty-fifth clause is fatally uncertain, both as to its subject and object. It vests no definite interest in specified property in any ascertained person, either natural or artificial, capable of enforcing a trust in its favor, and as it stands, and without the aid of some extraordinary power not possessed by the courts of this state, it is incapable of being carried into effect by judicial decree. (*Holland* v. *Alcock*, 108 N. Y. 312; *Levy* v. *Levy*, 33 id. 107; *Knight* v. *Knight*, 3 Beav. 148, 174; *Lechmere* v. *Lavie*, 2 M. & K. 197; *Meredith* v. *Heneage*, 1 Sim. 556; *Sale* v. *More*, Id. 534; *Eade* v. *Eade*, 5 Madd. 118; *Pierson* v. *Garnet*, 2 Bro. C. 45–230; *Sprague* v. *Barnard*, Id. 585; *Bland* v. *Bland*, 2 Cox, 349; *Curtis* v. *Ripon*, 5 Madd. 434; *Wilson* v. *Major*, 11 Ves. 205; *Knight* v. *Boughton*, 11 Cl. & F. 513; *Russell* v. *Jackson*, 10 Hare, 213; *Tibbits* v. *Tibbits*, 19 Ves. 664; *Flint* v. *Hughes*, 6 Beav. 342; Hill on Trustees [3d ed.], 116; *Gallego* v. *Atty.-Gen.*, 3 Leigh, 457; *Beekman* v. *Bonsor*, 23 N. Y. 306; *Morice* v. *Bishop of Durham*, 9 Ves. 400; *Sonley* v. *C. Co.*, 1 Bro. C. 81; *Phelps* v. *Pond*, 23 N. Y. 77; *Wheeler* v. *Smith*, 9 How. [U. S.] 55; *Rose* v. *Rose*, 4 Abb. Ct. App. Dec. 111; *Baptist Assn.* v. *Hart*, 4 Wheat. 1; *Power* v. *Cassidy*, 79 N. Y. 602; *Prichard* v. *Thompson*, 95 id. 81, 82; *Dillaye* v. *Greenough*, 45 id. 445; *Coxe* v. *Bassett*, 3 Ves. 155, 164; *Vesey* v. *Janson*, 1 Sim. & Stu. 69; *Ellis* v. *Selby*, 1 M. & C. 286; *James* v. *Allen*, 3 Mer. 19; *Down* v. *Worrall*, 1 M. & K. 561; *Nichols* v. *Allen*, 130 Mass. 211.) The provisions of this will cannot be upheld as an executory devise of the residuary estate to the Tilden Trust. (1 R. S. 723, §§ 7, 8, 9, 35, 41; Angell & Ames on Corp. § 184; *Porter's Case*, 1 Co. 24; *Atty.-Gen.* v. *Bonyer*, 3 Ves. 714; *Inglis* v. *Sailors' Snug Harbor*, 3 Pet. 99; *Burrell* v. *Board-*

*man,* 43 N. Y. 254; *Shipman* v. *Rollins,* 98 id. 311; *Jackson* v. *Robins,* 16 Johns. 589; *Jackson* v. *Bull,* 10 id. 19; *Moffat* v. *Strong,* Id. 12; *Patterson* v. *Ellis,* 11 Wend. 289; *Tator* v. *Tator,* 4 Barb. 431; *Jocelyn* v. *Nott,* 44 Conn. 55; *Donohue* v. *McNichol,* 61 Penn. St. 73; *Sears* v. *Putnam,* 102 Mass. 5.) If the trust is invalid, the disposition of the property cannot be upheld as a power in trust under sections 58 and 59 (1 R. S. 729), because the testator intended to vest the title to his estate in his executors and trustees. (1 R. S. 727, 728, §§ 47, 49; 2 Perry on Trusts, § 475; *Selden* v. *Vermilye,* 3 N. Y. 535; *Rawson* v. *Lampman,* 5 id. 460, 461; *Wright* v. *Douglas,* 7 id. 570; *Downing* v. *Marshall,* 23 id. 379, 380; *N. Y. D. D. Co.* v. *Stillman,* 30 id. 193; *Brewster* v. *Striker,* 2 id. 30–37; *Leggett* v. *Perkins,* Id. 317; *Tobias* v. *Ketchum,* 32 id. 328, 331; *Garvey* v. *McDevitt,* 72 id. 562, 563; *Vernon* v. *Vernon,* 53 id. 358, 359; 1 R. S. 734, §§ 94–101.) If, in the thirty-fifth clause of Mr. Tilden's will, a limitation of the residuary estate had been made to take effect on two alternative conditions, one of which was too remote and the other within the prescribed legal limits, and, therefore, valid, the gift, so far as it depended on the remote condition, might be held void, but be allowed to take effect on the happening of the valid alternative one. (*Savage* v. *Burnham,* 17 N. Y. 561; *Post* v. *Hover,* 33 id. 593; *Schettler* v. *Smith,* 41 id. 328; *Knox* v. *Jones,* 47 id. 389.) There is, however, but a single limitation in the will, and it is of the general trust of the residuary estate, and it is not made to take effect upon alternative events, or upon any specified condition whatever, except the exercise of the power given to the executors and trustees. (*Kennedy* v. *Hoy,* 105 N. Y. 137.) The trust attempted to be created in the thirty-fifth clause of this will, so far as it relates to real estate, is not authorized or sanctioned by any provision of the statutes of this state, and is void. (1 R. S. 727, 728, 729, §§ 45, 55; *Gott* v. *Cook,* 7 Paige, 535; *Manice* v. *Manice,* 43 N. Y. 382; *Ayres* v. *Methodist Church,* 3 Sandf. 351; *Yates* v. *Yates,* 9 Barb. 324; *Levy* v. *Levy,* 33 N. Y. 97; *Bascom* v. *Albertson,* 34 id. 584; *Adams* v. *Perry,*

43 id. 487; *Holmes* v. *Mead*, 52 id. 336.)    The provisions of
the thirty-fifth clause of this will fall within the restrictions of
the statute prohibiting the creation of perpetuities.    (*Hawley*
v. *James*, 16 Wend. 120 ; *Yates* v. *Yates*, 9 Barb. 324 ; *Gott*
v. *Cook*, 7 Paige, 540 ; *Boynton* v. *Hoyt*, 1 Den. 53 ; *Knox*
v. *Jones*, 47 N. Y. 389.)    The subsequent incorporation of the
Tilden Trust gave to it no right which it did not possess at the
time of Mr. Tilden's death.    (Laws of 1887, chap. 85, § 7.)

*Lyman D. Brewster* for respondent.    The attempted trust
cannot be turned into a valid power in trust.    The nature and
functions of the trust necessitate a title in the trustees.    It is
in terms imperative, and an imperative trust power, to be valid,
must be enforceable.    The trust in question does not come
within the terms of a trust power, as defined by statute.    (*Levy*
v. *Levy*, 33 N. Y. 97–101; *Bascom* v. *Albertson*, 34 id. 592;
*Holmes* v. *Mead*, 52 id. 332; *Rose* v. *Rose*, 4 Abb. Ct. App.
Dec. 108; *Powers* v. *Cassidy*, 79 N. Y. 602; *Prichard* v.
*Thompson*, 95 id. 76 ; *In re O'Hara*, Id. 403 ; *Holland* v.
*Alcock*, 108 id. 312 ; *Read* v. *Williams*, 35 N. Y. S. R. 909 ;
*Fosdick* v. *Town of Hempstead*, Id. 863 ; 2 Perry on Trusts,
508 ; Lewin on Trusts [5th ed.], 439 ; *Coleman* v. *Beach*, 97
N. Y. 545–559; *In re Bailey*, 24 Abb. [N. C.] 206 ; *In re
Jarman*, L. R. [8 Ch. Div.] 679 ; *Williams* v. *Kershaw*, 5 L.
J. [N. S.] 84; *Ellis* v. *Selby*, 1 M. & C. 286 ; *Adye* v. *Smith*,
44 Conn. 67; 1 R. S. 729, §§ 58, 96 ; *Dana* v. *Murray*,
122 N. Y. 604 ; *Van Horne* v. *Campbell*, 100 id. 317 ; *Woerz*
v. *Rademacher*, 120 id. 64–68 ; *Downing* v. *Marshall*, 23 id.
366–382.)    The general trust is not divisible, as claimed, into two
wholly independent and separate trusts or parts.    To isolate
the first so-called alternative and make it non-imperative,
changes the plan of the testator so utterly as to isolate it, and
make it imperative to choose only the first object.    As the
priority of the Tilden Trust among the beneficiaries creates no
enforceable right in its behalf, and as all the purposes of the
first alternative are included in the second, the Tilden Trust is
but one of the various purposes of the same class which the

trustees are to choose from and endow as and to the extent they deem expedient. Their judgment on the expediency of the endowment of each, or either object, can only be exercised by comparing the merits of the various purposes. (*Van Kleeck* v. *Dutch Church*, 20 Wend. 457; *Van Nostrand* v. *Moore*, 52 N. Y. 22; *Kiah* v. *Grenier*, 56 id. 220; *Heasman* v. *Pierce*, L. R. [7 Ch. Div.] 275; *Dungannon* v. *Smith*, 12 Cl. & F. 546; Sutherland on Stat. Const. § 326; *Lawrence* v. *Cooke*, 104 N. Y. 632; 1 Jarman on Wills, 693; *Harrison* v. *Harrison*, 44 Am. Dec. 379; *Beck's Appeal*, 59 id. 718; 2 Pom. Eq. Juris. § 1016; *Amory* v. *Lord*, 9 N. Y. 403; *Coster* v. *Lorillard*, 14 Wend. 266–388; *McSorley* v. *McSorley*, 4 Sand. Ch. 414; *Moore* v. *Moore*, 6 Jones' Eq. 132; *Richards* v. *Moore*, 5 Redf. 278; *Beans* v. *Bowen*, 47 How. Pr. 306; *Knox* v. *Jones*, 47 N. Y. 389; *Manice* v. *Manice*, 43 id. 303–384; *Savage* v. *Burnham*, 17 id. 561, 576; *Van Schuyver* v. *Mulford*, 59 id. 426, 431; *Tiers* v. *Tiers*, 98 id. 568–573; *Kennedy* v. *Hoy*, 105 id. 134.) An imperative, but non-enforceable general trust, like the one under discussion, cannot be converted into a special power in trust, and be good. (*Van Veghten* v. *Van Veghten*, 8 Paige, 104–124; *Belmont* v. *O'Brien*, 12 N. Y. 394–404; *Moncrief* v. *Ross*, 50 id. 431, 436; *Garvey* v. *McDevitt*, 72 id. 556, 562; 11 Hun, 457–460; *Cutting* v. *Cutting*, 86 N. Y. 522, 541; *Delaney* v. *McCormack*, 88 id. 174, 181; *Coleman* v. *Beach*, 97 id. 545, 558; *Cooke* v. *Platt*, 98 id. 35; *Chamberlain* v. *Taylor*, 105 id. 185, 192; *Woerz* v. *Rademacher*, 120 id. 62–68; *Weeks* v. *Cornwell*, 104 id. 325–339.)

BROWN, J. Samuel J. Tilden died in August, 1886, leaving a last will and testament dated in April, 1884. He left surviving him as his only next of kin and heirs at law one sister, two nephews, one of whom is the plaintiff in this action, and four nieces.

The defendants Bigelow, Green and Smith, were by the will appointed the executors thereof, and trustees of the trusts therein created, and the will having been duly admitted to probate in

October, 1886, they immediately qualified and entered upon the discharge of their duties as such.

This action was brought to obtain a construction of the will. By the complaint the thirty-third, thirty-fourth, and thirty-fifth articles were assailed as being invalid, but upon the trial no question was raised as to the two first named and no determination in respect thereto was made.

The Supreme Court held that the effect of the thirty-fifth and thirty-ninth articles of the will was to create one general trust for charitable purposes, embracing the entire residuary estate and vested in the trustees a discretion with respect to the disposition of such estate by them. That the testator did not intend to, and did not confer upon any person or persons, any enforceable right to any portion of said residuary estate and did not designate any beneficiary who was or would be entitled to demand the execution of the trust in his or its behalf and declared the provision of the will relating to the disposal of the residuary estate for such reasons illegal and void.

It is essential to a proper understanding of the will to read the two articles above named together and they are here quoted, the last being placed first.

"Thirty-ninth. I hereby devise and bequeath to my said executors and trustees and to their successors in the trust hereby created and to the survivors or survivor of them, all the rest, residue and remainder of all the property, real and personal, of whatever name or nature, and wheresoever situated of which I may be seized or possessed, or to which I may be entitled at the time of my decease, which may remain after instituting the several trusts for the benefit of specific persons; and after making provision for the specific bequests and objects as herein directed, to have and to hold the same unto my said executors and trustees, and to their successors in the trust hereby created, and the survivors or survivor of them in trust, to possess, hold, manage and take care of the same during a period not exceeding two lives in being; that is to say, the lives of my niece, Ruby S. Tilden, and my grandneice Susie Whittlesey, and until the decease of the survivor of the said

two persons, and after deducting all necessary and proper expenses, to apply the same and the proceeds thereof to the objects and purposes mentioned in this my will."

" Thirty-fifth. I request my said executors and trustees to obtain, as speedily as possible, from the legislature an act of incorporation of an institution to be known as the 'Tilden Trust' with capacity to establish and maintain a free library and reading-room in the city of New York, and to promote such scientific and educational objects as my said executors and trustees may more particularly designate. Such corporation shall have not less than five trustees, with power to fill vacancies in their number; and in case said institution shall be incorporated in a form and manner satisfactory to my said executors and trustees during the life-time of the survivor of the two lives in being upon which the trust of my general estate herein created is limited, to wit.: the lives of Ruby S. Tilden and Susie Whittlesey, I hereby authorize my said executors and trustees to organize the said corporation, designate the first trustees thereof, and to convey or apply to the use of the same the rest, residue and remainder of all my real and personal estate not specifically disposed of by this instrument, or so much thereof as they may deem expedient, but subject nevertheless, to the special trusts herein directed to be constituted for particular persons, and to the obligations to make and keep good the said special trusts, provided that the said corporation shall be authorized by law to assume the obligations. But in case such institution shall not be so incorporated during the life-time of the survivor of the said Ruby S. Tilden and Susie Whittlesey, or if for any cause or reason my said executors and trustees shall deem it inexpedient to convey the said rest, residue and remainder, or any part thereof, or to apply the same or any part thereof to said institution, I authorize my said executors and trustees to apply the rest, residue and remainder of my property, real and personal, after making good the said special trusts herein directed to be constituted or such portion thereof as they may not deem it expedient to apply to its use, to such charitable, educational and scientific purposes as in the

judgment of my said executors and trustees will render the said rest, residue and remainder of my property most widely and substantially beneficial to the interests of mankind."

On March 26, 1887, subsequent to the commencement of this action, the legislature passed an act incorporating the "Tilden Trust" and authorizing it to establish and maintain a free library and reading-room in the city of New York. The institution was organized, and the executors and trustees made to it a conveyance of the residuary estate and the conveyance was formally accepted by the trustees thereof.

The law is settled in this state that a certain designated beneficiary is essential to the creation of a valid trust.

The remark of Judge WRIGHT in *Levy* v. *Levy* (33 N. Y. 107), that "if there is a single postulate of the common law established by an unbroken line of decisions it is that a trust without a certain beneficiary who can claim its enforcement is void" has been repeated and reiterated by recent decisions of this court (*Prichard* v. *Thompson*, 95 N. Y. 76; *Holland* v. *Alcock*, 108 id. 312; *Read* v. *Williams*, 125 id. 560), and the objection is not obviated by the existence of a power in the trustees to select a beneficiary unless the class of persons in whose favor the power may be exercised has been designated by the testator with such certainty that the court can ascertain who were the objects of the power.

The equitable rule that prevailed in the English Court of Chancery known as the *cy pres* doctrine and which was applied to uphold gifts for charitable purposes when no beneficiary was named has no place in the jurisprudence of this state. (*Holmes* v. *Mead*, 52 N. Y. 336; *Holland* v. *Alcock, supra.*)

If the Tilden Trust is but one of the beneficiaries which the trustees may select as an object of the testator's bounty, then it is clear and conceded by the appellants that the power conferred by the will upon the executors is void for indefiniteness and uncertainty in objects and purposes. The range of selection is unlimited. It is not confined to charitable institutions of this state or of the United States but embraces the whole world. Nothing could be more indefinite or uncertain, and broader

and more unlimited power could not be conferred than to apply the estate to " such charitable, educational and scientific purposes as in the judgment of my executors will render said residue of my property most widely and substantially beneficial to mankind."

"A charitable use where neither law or public policy forbids may be applied to almost anything that tends to promote the well doing and well being of social man." (Perry on Trusts, § 637.)

Unless, therefore, within the rules which control courts in the construction of wills we can separate the provision in reference to the Tilden Trust from the general direction as to the disposition of the testator's residuary estate, contained in the last clause of the thirty-fifth article, and find therein that a preferential right to some or all of such estate is given to that institution when incorporated, and one which the court at the suit of said institution could enforce within the two lives which limit the trust, we must, within the principle of the cases cited, declare such provisions of the will invalid and affirm the judgment of the Supreme Court. The appellants claim that the power conferred upon the executors to endow the Tilden Trust may be upheld independent of the invalidity of the power given to apply the estate to such charities as would most widely benefit mankind.

The proposition is that by the thirty-fifth article the testator made two distinct alternative provisions for the disposition of his residuary estate. One primary for the incorporation and endowment of the Tilden Trust, the other ulterior and to be effectual only in case the executors deemed it inexpedient to apply the residue to that corporation, and it is claimed that this provision of the will constitutes a trust to be executed for the benefit of the Tilden Trust or confers upon the trustees a power in trust or that it constitutes a gift in the nature of an executory devise.

The latter proposition rests upon the assumption that there is by the will a primary gift complete and perfect in itself to the Tilden Trust that vests the title in that corporation immediately upon its creation.

That a valid devise or bequest may be limited to a corporation to be created after the death of the testator, provided it is called into being within the time allowed for the vesting of future estates, is not denied. (Perry on Trusts, 372, § 736.)

That question was decided in *Inglis* v. *Trustees of the Sailors' Snug Harbour* (3 Peters, 99), and in *Burrill* v. *Boardman* (43 N. Y. 254).

In those cases the gift was treated as in the nature of an executory devise dependent upon the incorporation of the institution contemplated by the will and which would vest upon the occurrence of that event.

But in view of the language of the will before us that proposition cannot be maintained here.

By an executory devise a freehold was limited to commence in the future and needed no particular estate to support it. It arose upon the happening of a specified event and the fee descended to the heir at law until the contingency happened. By our Revised Statutes executory devises are abolished and expectant estates are substituted in their place, and such estates when the contingency happens upon which they are limited vest by force of the instrument creating them and this right in the expectant cannot be defeated by any person. But the testator here intended not to create such an estate. The Tilden Trust takes nothing by virtue of the will. The residuary estate is vested in the trustees or intended to be and it is solely by their action that it is to become vested in the Tilden Trust.

It is only in case that the executors deem it expedient so to do that they are to convey the whole or any part of the residue to the Tilden Trust. Whether that corporation should take anything rested wholly in the discretion of the executors, as the expediency or inexpediency of an act is always a matter of pure discretion. (2 Perry on Trusts, §§ 506, 507.)

Every expression used in the will indicates the bestowal of complete discretionary power to convey or not to convey, and the creation and bestowal of such a power in the executors is wholly opposed to and fatal to the existence of an executory devise.

In this respect the case differs from those cited.

In *Inglis* v. *The Sailors' Snug Harbour*, there was no trust created, no discretion vested in the executor, no conveyance to be made after the testator's death. His intention to give his property to a corporation to be created to carry out his charitable purpose was clear. Such was the fact also in *Burrill* v. *Boardman.*

By the will in that case the property was given directly to the corporation which the testator contemplated should be created after his death. No trust was created and no discretion was bestowed upon the executors to determine whether the corporation should or should not have it.

Once created, the property by force of the will vested in the corporation. The only similarity between that case and this is that the trustees there, as here, were directed to apply to the legislature for an act of incorporation. In case the legislature refused to grant a liberal charter then the trustees were directed to pay over the estate to the government of the United States.

But no discretion was given to the executors to determine upon any event whether or not the corporation once created should take the property.

"Nothing" said Chief Justice CHURCH "can be more certain than that the testator designed that the title to the funds or property in the possession of the trustees or elsewhere which was included in the residuary clause should vest in the corporation immediately upon its creation."

"An application was to be made to the legislature, after the testator's death, for a charter. If obtained the bequest would take effect; if not it would go the ulterior donee. If the corporation applied for and granted should not be liberal and in accordance with the provisions of the will, the ulterior donee or next of kin could challenge its right to take the bequest. It would then become a judicial question." So clearly no question in that case was left to the judgment of the trustees. They were not to determine even whether the charter was a liberal one. That was a question for the court that would have been decided in any contest over the property between the

corporation and the next of kin or ulterior donee. A discretionary power in executors or trustees was not, therefore, an element in the *Burrill* case. Not so here. Here we have the unlimited authority delegated to the executors to withhold the entire property from the corporation if they choose so to do. There the corporation once created was vested immediately by force of the will with the title to the property. Here, although the corporation may be created in a form and manner satisfactory to the trustees, it takes nothing unless the executors, considering every cause and reason, deem it expedient to convey to it some or all of the residuary estate.

In the *Burrill* case the testator made a direct gift to a designated beneficiary, the Roosevelt hospital. In this case Mr. Tilden gave nothing to the Tilden Trust, but simply authorized his executors to endow it if, in their judgment and discretion, they should deem it expedient. Moreover after creating numerous special trusts and setting apart portions of his real estate for such several special trust funds, the testator, by the thirty-ninth article of the will, gives the whole of the residuary estate to his executors in trust for the purposes mentioned in the thirty-fifth article, bestowing upon them so far as language could do so, the title to all the property to be held and possessed during the lives of his niece Ruby S. Tilden and his grandniece Susie Whittlesey, and which he denominated the "General Trust" of his estate. He clearly intended by this provision to create an active trust in his whole residuary estate and to give to his executors a discretionary power to give such part of it as they deemed expedient to the Tilden Trust, or to withhold all from it. Having intended to convey so far as he was able to do the title to his whole estate to trustees, nothing was left that could be the subject of a gift to the Tilden Trust.

We come, therefore, to the consideration of the question whether the thirty-fifth article can be upheld as constituting a separate trust or power in trust for the benefit of the Tilden Trust.

The affirmative of this question can be maintained only by considering the direction to convey to the Tilden Trust as a

power separate by itself and distinct and independent from the power to convey to such charitable purposes as in the judgment of the trustees would be most widely and substantially beneficial to mankind.

The latter provision is eliminated from the will altogether by the appellants, and then the instrument is construed as if the eliminated provision had never existed.

The appellants invoke the aid of the principle that where several trusts are created by a will which are independent of each other, and each complete in itself, some of which are lawful and others unlawful, and which may be separated from each other, the illegal trusts may be cut off and the legal ones permitted to stand.

This rule is of frequent application in the construction of wills, but it can be applied only in aid and assistance of the manifest intent of the testator, and never where it would lead to a result contrary to the purpose of the will or work injustice among the beneficiaries, or defeat the testator's scheme for the disposal of his property.

The rule as applied in all reported cases recognizes this limitation, that when some of the trusts in a will are legal and some illegal, if they are so connected together as to constitute an entire scheme, so that the presumed wishes of the testator would be defeated if one portion was retained and other portions rejected, or if manifest injustice would result from such construction to the beneficiaries, or some of them, then all the trusts must be construed together and all must be held illegal and must fall. (*Manice* v. *Manice*, 43 N. Y. 303; *Van Schuyver* v. *Mulford*, 59 id. 426; *Knox* v. *Jones*, 47 id. 389; *Benedict* v. *Webb*, 98 id. 460; *Kennedy* v. *Hoy*, 105 id. 135.)

The cases cited fairly illustrate the practical application of this rule by the courts.

In *Knox* v. *Jones* the testator created one trust to receive and pay over the income of his estate to his brother for his life and then to his sisters, with cross-limitations over as between them, remainder to the children of his sister Georgiana, and in default of children to Columbia college. This court held the

whole trust invalid and refused to sustain the provision in behalf of the testator's brother on the ground that there was but a single trust which provided for all the beneficiaries, and that they were all embraced in a common purpose. That the several provisions of a single trust could not be severed, and those that violated the statute against perpetuities dropped and the others sustained. In *Van Schuyver* v. *Mulford* a gift to the testator's wife of the rents and income and profits of the estate during life was upheld and declared to be valid, although the devise over might be void on the ground that the gift to the wife was separate and distinct from the other provision of the will and had no effect beyond her life or upon the ultimate disposition of the estate.

In *Benedict* v. *Webb*, the testator created separate trusts in two-thirds of his estate for the benefit of his four children. Three of the trusts were held to be valid and one invalid on the ground that the trust term transgressed the statute. But the court refused to sustain the valid trusts on the ground that to do so would defeat the intention of the testator in the disposition of his property and work injustice among the beneficiaries by permitting three of the children to take under their respective trusts and also as heirs at law in the one-fourth as to which the trust was declared invalid.

The result of these and all other cases is that in applying the rule invoked by the appellants, which permits unlawful trusts to be eliminated from the will, and those that are lawful to be enforced, we must not violate the intention of the testator, or destroy the scheme that he has created for the disposition of his property.

We may enforce and effectuate his will and give full effect to his intent, provided it does not violate any cardinal rule of law, but we cannot make a new will or build up a scheme for the purpose of carrying out what might be thought was or would be in accordance with his wishes.

At the threshold of every suit for the construction of a will lies the rule that the court must give such construction to its provisions as will effectuate the general intent of the testator

as expressed in the whole instrument. It may transpose words and phrases and read its provisions in an order different from that in which they appear in the instrument, insert or leave out provisions if necessary, but only in aid of the testator's intent and purpose. Never to devise a new scheme or to make a new will.

The fact that the executors of the will applied to the legislature and procured the incorporation of the Tilden Trust in a form and manner satisfactory to themselves, and have deemed it expedient to convey to it the whole residuary estate and have executed a conveyance thereof, is not a matter for consideration in this connection. This point was considered in *Holland* v. *Alcock* and in *Read* v. *Williams* (*supra*), and it was held that the validity of the power depended upon its nature and not on its execution. In the latter case, the testator bequeathed the residue of his estate " to such charitable institutions and in such proportion as my executors by and with the advice of my friend Rev. John Hall, D. D., shall choose and designate." And prior to the commencement of the action, the executors, with the advice of Dr. Hall, made a written choice and designation of certain incorporated institutions existing under the laws of this state, among whom they directed the residuary estate to be divided. The fact of selection was not deemed material and the will was declared invalid.

The rights of heirs and next of kin exist under the Statutes of Descent and Distribution, and vest immediately upon the death of the testator.

If the trust or power attempted to be created by the will, or the disposition therein made is valid, their rights are subject to it, but if invalid, they immediately become entitled to the property. Hence the existence of a valid trust is essential to one claiming as trustee to withhold the property from the heir or next of kin. What a trustee or donee of a power may do becomes, therefore, immaterial. What he does must be done under a valid power, or the act is unlawful. If the power exercised is unauthorized, the act is of no force or validity.

In such case there is no trust or power.  There is nothing but
an unauthorized act ineffectual for any purpose.

It is not deemed material to the decision of the question
now under consideration whether the provisions of the will
relating to the residuary estate are regarded as constituting a
trust or a power in trust, except so far as that fact may be
indicative of the testator's intention.

If there was a trust, then the executors took title to the
residuary estate, but if there is created a valid power in trust,
it will be executed with substantially the same effect as if the
will created a trust estate.  But section 58 of the Statute of
Uses and Trusts, which declares that when an express trust is
created for any purpose not enumerated in the foregoing sec-
tions, no estate shall vest in the trustees, but the trust, if direct-
ing the performance of an act which may be lawfully performed
under a power, should be valid as a power in trust, is not, of
course, susceptible of the construction that a trust invalid
because in conflict with some cardinal rule of law could be
upheld as a power.

Every trust necessarily includes a power.  There is always
something to be done to the trust property and the trustee is
empowered to do it, and if the trust is invalid because the
power to dispose of the property is not one that the law recog-
nizes, it cannot be upheld as a power in trust.  The rules
applicable to the execution of trusts in this respect are equally
applicable to the execution of powers, and as it is of no particu-
lar importance in this case in whom the title to the residuary
estate is vested, it is not material to the decision whether the
provisions of the will are examined as a trust or as a power in
trust.  The purpose of the trust is lawful, and personal prop-
erty which constitutes the greater part of the testator's estate
was a proper subject of the trust that the testator intended, and
if it is invalid, it is because the power conferred on the trustees
for the disposal of the estate is so uncertain and indefinite that
its execution cannot be controlled or enforced by the courts.

In *Prichard* v. *Thompson*, the legal title to the fund was
vested in the executors in trust.  In *Read* v. *Williams*, the

executors were given a power in trust. But the court said there was in that respect no legal distinction, and the power in the latter, as the trust in the former case, was declared invalid.

But the nature of the estate which the testator intended to convey to his trustees and the nature of the power intended to be delegated to them is of importance in ascertaining his intent and determining what was the scheme· that he had for the disposal of his property. By our Revised Statutes (vol. 1, p. 733), powers, as they existed by the common law, were abolished, and thereafter their creation, construction and execution were to be governed by statute. They are classified as general and special, beneficial and in trust. A beneficial power is one that has for its object the grantee of the power, and is executed solely for his benefit. (§ 79.) Trust powers, on the other hand, have for their object persons other than the grantee, and are executed solely for the benefit of such other persons. (§§ 94, 95.) Trust powers are imperative, and their performance may be compelled in equity, unless their execution or non-execution is made expressly to depend on the will of the grantee. (§ 96.) And a trust power does not cease to be imperative where the grantee of the power has the right of selection among a class of objects. (§ 97.) And sections one hundred and one hundred and one make provision for the execution by a court of equity of trust powers where the trustee dies, or where the testator has created a valid power, but has omitted to designate a person to execute it. A trust power, to be valid, therefore, must designate some person, or class of persons, other than the grantee of the power, as its objects, and it must be exercised for the sole benefit of such designated beneficiary, and its execution may be compelled in equity. A non-enforceable trust power is an impossibility under our law, unless, by the instrument creating it, it is expressly made to depend for its execution on the will of the grantee.

In every case where the trust is valid as a power, the lands to which the trust relates remain in or descend to the persons

otherwise entitled, subject to the execution of the trust as a power.   (1 R. S. 729, § 59.)

Before applying these rules to the case before us, our duty is to ascertain the testator's intent from an inspection of the will, and for this purpose we must read the whole instrument, including the provisions admitted to be void.  Those provisions, though ineffectual to dispose of the property, cannot be obliterated when examining it for the purpose of ascertaining the testator's intention.  (*Van Kleeck* v. *Dutch Church*, 20 Wend. 457; *Kiah* v. *Grenier*, 56 N. Y. 220.)

The prominent fact in the testator's will is that he intended to give his property to charity.   He intended that none of his heirs or next of kin should take any of it, except such as he gave to them through the several special trusts that he created for their benefit.  He emphasized this purpose in the last article of his will by providing that any of them who should institute or share in any proceeding to oppose the probate of the will, or to impeach, impair, or to set aside or invalidate any of its provisions, should be excluded from any participation in the estate, and the portion to which he or she might otherwise be entitled to under its provisions should be devoted to such charitable purposes as his executors should designate. To the accomplishment of this purpose, he intended to create a trust, and doubtless believed that he created a valid one. He created numerous trusts for the benefit of his relatives and for the creation of other libraries and reading-rooms.   These he denominated " Special Trusts."   In the thirty-ninth article he devised and bequeathed to his executors and " to their successors in the trust hereby created, and to the survivor and survivors of them," all the rest and residue of his property, " to have and to hold the same unto my said executors and trustees and to their successors in the trust hereby created \* \* \* to possess, hold and manage the same" during the lives of his neice, Ruby S. Tilden, and his grand-niece, Susie Whittlesey, and " to apply the same and the proceeds thereof to the objects and purposes mentioned in this my will."   He gave to his executors the power to collect the income of the whole estate,

that which was set apart in the special trusts and that constituting the trust of the residuary estate. The trust of the residuary estate he denominated the "General Trust," and in the twenty-sixth article he gives direction as to the disposition of the surplus income "during the continuance of the trust of my general estate."

It is clear, therefore, that the testator intended to create a trust of his residuary estate, and in plain, unequivocal language he indicated his purpose to be that the trustees should be vested with the title to the property until they should divest themselves of it in carrying out the purposes mentioned in the will, and which are to be found in the thirty-fifth article. Turning to this article, the important feature is that the power there given to the trustees, and the only power that could absolutely effectuate the testator's intent to devote his property to charity, was an imperative one.

There is no discretion to be exercised upon the question whether the property shall go to charitable purposes. There is no act involving that disposition of the property the execution of which is made to depend on the will of the trustees.

Discretion there is as to the objects of the charity, but none as to the general disposition of the estate. If the Tilden Trust is incorporated in a form and manner satisfactory to the trustees they are authorized to convey to that institution the whole residue or so much thereof as they shall deem expedient, and if for any cause or reason they deem it inexpedient to endow that institution with the whole or any part of the residue, then to apply the same or such part as they do not apply to the use of the Tilden Trust to such charitable purposes as they shall deem most widely beneficial to mankind.

The object and purpose in this scheme of the testator is, therefore, a devotion of his estate to charity.

But it is said that the Tilden Trust represents an intention different from and alternative to the gift to the charitable, educational and scientific purposes mentioned in the last clause of the article. That the authority to endow it that is vested in the trustees is a primary power and the power to devote the estate to the other undefined purposes is ulterior.

That while the latter is imperative in its character, the former is discretionary wholly, and depends for its execution upon the will of the trustees, and that each power stands alone separate and distinct from the other, and the power to endow the Tilden Trust is likened to a power of appointment.

Powers of appointment are so common in testamentary dispositions of property that no citation of authority is necessary to show their validity.

Their execution may depend solely upon the will of the donee of the power, and they are recognized as valid by the ninety-sixth section of the statute already quoted. "I give to A. such portion of my residuary estate as B. shall, within the life-time of the survivor of C. and D., designate and appoint," which is the case suggested on the brief, is undoubtedly a good testamentary bequest, and is a good illustration of a naked power of appointment, the execution of which depends on the will of B., and is not enforceable at the suit of A.

In such a case the title to the property descends to the heirs or next of kin, or passes under the will to the ulterior donee, subject to the execution of the power.

But there is no similarity between the suggested bequest and the will before us. Follow that bequest by a gift over to charitable uses, or let it stand alone in the will, and you have in one case alternative gifts and in the other alternative purposes.

There is a preference expressed or implied by the testator as to the purpose to which his estate shall go and the objects that shall be benefited.

In the one case the choice lies between the individual legatee and the heirs, in the other between the legatee and a disposition to charity.

But in the will before us there is no alternative purpose. There is a single-scheme, a gift to charitable uses, and the suggestion of the Tilden Trust indicates no intent in the testator's mind contrary to the intention to devote the estate to charity, and in this respect the will before us is distinguished from the case suggested by the learned counsel for the appellants of a

power to convey the estate to a designated individual at a
stated age, and in the event of the donee of the power deem-
ing it inexpedient so to do, then a gift over to undefined
charitable uses.

There the primary purpose of the testator is a gift to the
designated legatee and not to charity.   And the intent to give
the estate to charitable uses is secondary and limited upon the
determination of the trustee not to make the primary gift.
Such a will plainly indicates alternative purposes and contains
alternative powers.   The two gifts are in no respect connected,
and if the gift over is void, the first may stand and, if exe-
cuted, represents the will of the testator.

But in the thirty-fifth article of the will under consideration
there is no antithesis so far as the purpose to which the prop-
erty is to be devoted is concerned.   It expresses a single intent
only, viz. : To devote the estate to charitable uses, and while,
of course, in such a scheme the testator might prefer and
designate one corporation over another as the object of his
bounty, I shall attempt to show that in this case he has not
done that and has not conferred any preferential right to the
estate or any part of it upon the Tilden Trust.

What is the Tilden Trust and how does it stand in the
testator's scheme ?

It may fairly be assumed that the testator, having determined
to devote his estate to charity, understood that his object could
be accomplished only through the instrumentality of a corpo-
rate body.

He requested his trustees to cause the Tilden Trust to be
incorporated.   It was to have the power to establish and main-
tain a free library and reading-room in the city of New York,
and "to promote such scientific and educational objects" as
the executors and trustees should designate.   The latter power
is precisely what the trustees are authorized to do by the
so-called ulterior provision, viz., to apply the estate to such
"educational and scientific purposes" as they should judge
would be most beneficial to mankind.

Here, therefore, we have an authority to do the same thing

in each provision of the will, and as the latter could only be worked out through the medium of a corporation, the so-called two powers are the same. So as to the free library and reading-room. That is plainly within the scientific and educational purposes of the second provision of the will, and could be maintained only through a corporate body. The suggested capacities of the Tilden Trust are, therefore, precisely the same as the so-called ulterior purposes, and each are expressive of the testator's scheme so far as he had formulated it in his own mind. The Tilden Trust, therefore, plainly does not represent any alternative or primary purpose in the disposition of the estate, but is simply the suggested instrument to execute the testator's scheme for the disposition of the property. Now, what did the testator intend the trustees should consider when they came to the determination of the expediency or inexpediency of endowing that institution. The argument is that they could not consider the ulterior purposes at all until they had disposed of the question whether it was expedient to convey to the Tilden Trust all or a part of the residuary estate.

But that is saying that they should determine that question without reference to the substance of the gift and the object and purposes which the testator had in view. For, as I have already shown, the capacities and powers of the Tilden Trust, in other words, its purposes and objects, or rather the purposes and objects which the testator intended to effectuate through its instrumentality, are precisely the same as the so-called ulterior purposes, and as the latter must be carried out through the instrumentality of a corporation, the only distinction between the two is in the name of the corporation that is to administer the fund. The question of expediency, therefore, resolves itself into a question whether the trustees should select the Tilden Trust, or some other corporation, through which to carry out the purposes of the will. Now, how could the trustees, charged with the imperative duty of devoting the estate to charitable and educational purposes, consider the question whether they should endow the Tilden Trust without taking a complete view of the whole field of charity.

They were bound to do so if they fairly attempted to carry out the testator's plan.

Take the question of the free library and reading-room. There is no duty or obligation imposed upon them in that respect. They are not bound to create or endow one. They are free to select any other educational object. So with locality. Can it be seriously claimed that there is any duty resting on them to establish a library in the city of New York? Is not the capital of the state or of the United States open to their choice of location, if they think a library located there would be more widely beneficial to mankind? Clearly, it appears to me that it was within the scope of the discretion committed to the trustees to determine whether a free library or reading-room should be established at all, and whether that or any other charitable or educational institution that they might select should be located in the city of New York, and that their determination of such question would be among the causes or reasons which might lead them to decide that it was inexpedient to endow the Tilden Trust, and that the testator intended that when the trustees should consider the Tilden Trust, they should consider their power with reference to the disposal of the estate, and the fact that if they did not endow that institution, they could still execute his wishes by applying it to such charitable, educational and scientific purposes as they should select.

In other words, that if they did not give it to the institution that he suggested and which would bear his name, they could give it to others and still execute his will and carry out his general purpose for the disposal of his estate, and this power meant comparison of all charitable and educational objects, and selection from among them.

In substance he said to his executors: I have determined to devote my estate to charitable, educational and scientific purposes; I have formed no detailed plan how that purpose can be executed, but under the law of New York it must be done through and by means of a corporation. I request you to cause to be incorporated an institution to be called the Tilden

Trust with capacity to maintain a free library and reading-room in the city of New York, and such other educational and scientific objects as you shall designate, and if you deem it expedient, that is, if you think it advisable and the fit and proper thing to do, convey to that institution all or such part of my residuary estate as you choose, and if you do not think that course advisable then apply it to such charitable, educational and scientific purposes as in your judgment will most substantially benefit mankind. Thus was left to the trustees the power to dispose of the estate within the limits defined and to select the objects that should be benefited, and it is impossible to read the thirty-fifth article and find therein any preference in the way of a separate gift or power to the Tilden Trust or to separate that institution from the testator's plan to devote his estate to charity. The trustees are free to select the Tilden Trust and cause it to be incorporated or to choose any existing corporation as the instrument to carry out the testator's scheme. Again, no event is named upon the happening of which any estate is limited to the Tilden Trust. The only condition suggested is the determination by the trustees of the question whether they deem it expedient to endow that institution. But if the views already expressed are correct, if the Tilden Trust is but one of many instruments through which the testator's charitable purposes may be executed or is but a suggested beneficiary under the power, then the determination of the question of expediency involves the doing of the very thing which the law condemns, viz., a selection from an undefined and unlimited class of objects, and the power would be void.

It thus becomes apparent how important is the so-called ulterior provision in the plan which the testator had for the disposal of his estate, and effect cannot be given to that plan if that provision is stricken from the will, as it expressly defines the scope of the discretion committed to the trustees.

Strike out that provision and instead of a discretion in the trustees limited to the selection of the objects that should be benefited by the will their power would be confined to the

endowment of the Tilden Trust, and if they choose not to act or failed to act the estate would go to the heirs at law. Indeed the legal effect of the will would be in that case to vest the title to the estate in the heirs subject to the execution of the power to endow the Tilden Trust.

But if the provision of the will makes one thing particularly clear it is that the testator intended his estate to be devoted to charitable purposes and should in no event go to his heirs, and he did not intend that his trustees should have the power to choose between his heirs and the Tilden Trust.

We cannot, therefore, obliterate the so-called ulterior provision and give effect to the scheme of the will.

The discretion plainly conferred on the trustees in the delegation of the power to determine the expediency or inexpediency of endowing the Tilden Trust would be thereby destroyed, and the trustees would be compelled to convey the estate to that institution, or by permitting the heirs to retain it, thwart the expressed wish of the testator.

Again, the appellants argue that the power to endow the Tilden Trust is one depending for its execution on the will of the trustees and is not imperative, and hence not subject to the test whether it can be enforced in a court of equity. This argument is, perhaps, fairly answered when the conclusion is reached that the ulterior purpose cannot be stricken from the will and that the thirty-fifth article represents but one scheme and one purpose for the disposal of the estate.

But it will be apparent in the view here taken that the testator did not intend that any power conferred upon his trustees should depend for its execution upon their will. Of course, in every power where the trustees have the right to select any and exclude others, there is necessarily involved discretion, and the final choice does in one sense rest upon the will of the trustee, but not as that term is used in the statute. The power conferred is the authority to convey the estate. That is imperative. The discretion committed to the trustee was to select the particular object. The choice depends on the trustees' will, but the act of choosing is imperative, else the power

could not be executed. It is the result alone, therefore, that depends on the will of the trustees and not the performance of the act of selection. A power is defined to be "an authority to do some act  *  *  *. which the one granting or reserving such power might himself lawfully perform." (1 R. S. 732, § 74.) Section 58 provides that if the unauthorized trust there mentioned directs the "performance of any act" which may be lawfully performed under a power, that it shall be valid as a power in trust.

Now the acts authorized by the testator were those of selection and conveyance. The result of selection depended on the will of the trustees, whether they should choose one corporation or another, but the performance of the act of selection was just as obligatory as the duty to convey. The testator intended both should be performed, and the trustees could no more refuse or neglect one than the other. It follows from the views here expressed that the authority to endow the Tilden Trust, if that should be deemed expedient by the trustees, was not a separate power, distinct from the purpose to devote the estate to charitable uses, but was incidental to the testator's scheme and involved therein.

While we may admit that the testator expressed a preference for a corporation that should bear his name, he conferred no right upon that institution. The purpose to which the estate should be applied he determined and designated, but the persons who should be benefited by the will and the particular institution that should administer the fund was left to the selection of the trustees. The expression of a preference conferred no right so long as the final choice was left to the trustees.

It was simply a suggestion which they might or might not adopt and imposed no duty upon them, and in no way limited or fettered their action. (*Lawrence* v. *Cooke*, 104 N. Y. 632; 2 Pomroy's Eq. J. 1016, note.)

We are of the opinion, therefore, that the thirty-fifth article of the will does not confer separate powers upon the trustees and that the so-called ulterior provision cannot be eliminated from the will without destroying the scheme that the testator

designed for the disposal of his estate. That the whole article represents one entire and inseparable charitable scheme, and cannot be subdivided, and the power conferred on the trustees is one of selection.

This power was under the statute special and in trust. Under the sections heretofore quoted such a power is imperative and imposes a duty on the grantee, the performance of which may be compelled in equity for the benefit of the parties interested, unless its execution or non-execution is made expressly to depend on the will of the grantee, and it does not cease to be imperative where the grantee has the right to select any and exclude others of the persons designated as the objects of the power.

The power conferred by the will not being made to depend for its execution on the will of the trustees was, therefore, imperative, but it is not valid unless it can be enforced by the courts at the suit of some beneficiary.

As the selection of the objects of the trust was delegated absolutely to the trustees, there is no person or corporation who could demand any part of the estate or maintain an action to compel the trustees to execute the power in their favor. This is the fatal defect in the will. The will of the trustees is made controlling, and not the will of the testator.

As was said by the learned presiding justice of the General Term, " the radical vice of the entire provision seems to have arisen from the testator's unwillingness to confer any enforceable rights upon any qualified person or body."

Under the statute of powers there may be a power of selection and exclusion with regard to designated objects, and the duty there imposed is made imperative and enforceable by the court.

But the statute presupposes that a power of selection must be so defined in respect to the objects that there are persons who can come into court and say that they are embraced within the class and demand the enforcement of the power. (*Read* v. *Williams, supra,* p. 569.)

The views which Judge VAN BRUNT expressed in that case

on that point at General Term received direct approval in this court. He said: " It is conceded that the power contained in the clause in question comes under the head of a special power in trust as defined in the Revised Statutes, but it is said such a power is to be distinguished from a trust;" that the words " in trust" are used for purposes of classification only. We think, however, that to render a power in trust valid the same certainty as to beneficiary must exist as in the case of a trust. (27 N. Y. State Rep. 507.)

These views find full confirmation in the provision of the statute to the effect that if the trustee dies leaving the power unexecuted a court of equity will decree its execution for the benefit equally of all persons designated, and if the testator fails to designate the person by whom the power is to be executed, its execution devolves upon the court (§§ 100, 101), thus providing a scheme which prevents the failure of a testator's purpose when its subject is certain and its objects designated.

But in this case execution of the power could not be decreed by the court in either of the cases specified in the statute.

By an enforceable trust is meant one in which some person or class of persons have a right to all or a part of a designated fund, and can demand its conveyance to them, and in case such demand is refused may sue the trustee in a court of equity and compel compliance with the demand.

In this case the testator devolved upon his executors the duty of selecting the beneficiary and there is no person who has the right to enforce that duty or demand any part of the estate in case the executors refuse or neglect to act.

The power attempted to be vested in the trustees cannot be controlled or enforced, and whether the provisions of the will relating to the residuary estate be regarded as creating a trust or power in trust, they are in either case void.

The judgment should be affirmed.

BRADLEY, J. (dissenting). This action for the construction of the will of Samuel J. Tilden, deceased, was founded on the

charge that it was ineffectual to dispose of the residuary estate or to provide for any lawful disposition of it, because the provisions of the thirty-fifth article by which that was sought to be accomplished were invalid in that they were as to both the object and subject of the trust he had in view indefinite and uncertain. If this proposition is supported the conclusion that such was the effect necessarily follows.

It is evident that the testator when he made his will intended not to die intestate as to any of his property. And that his purpose to make testamentary disposition of all of it not only appears by the dispositional provisions of his will, but also by those of the forty-third article by which he declared : " Since I have made a disposition of my property according to my best judgment, and since, as most of the devisees under it are females, it is impossible to forsee under what influences some one or more of them might possibly come, and since it is desirable to avert unseemly or speculative litigation, I hereby declare it to be my will that in case any person who, if I had died intestate, would be entitled to any share of my property or estate, shall under any pretense whatever institute, take or share in any proceeding to oppose the probate of this, my last will and testament, or to impeach or impair or to set aside or invalidate any of its provisions, any devise or legacy to or for the benefit of such person or persons under this will is hereby revoked, and such person shall be excluded from any participation in and shall not have any share or portion of my property or estate, real or personal ; and the portion to which such person might be entitled under the provisions of this instrument shall be devoted to such charitable purposes as my said executors and trustees shall designate."

In proceeding to the consideration of the questions presented, it may be observed as a cardinal rule of construction that the intent of a testator should be sought for in the provisions of his will, and when so ascertained effectuated, if the language used permits, although the transposition, rejection or supply of words may be required to clearly express such intention. And when susceptible of it, the construction will

be given which renders it operative rather than invalid. (*Hoppock* v. *Tucker*, 59 N. Y. 203; *Phillips* v. *Davies*, 92 id. 199; *DuBois* v. *Ray*, 35 id. 162.)

He had in view the creation and endowment of a Tilden Trust with the capacity mentioned. He, therefore, requested the executors and trustees to obtain as speedily as possible from the legislature an act of incorporation of an institution to be known as the Tilden Trust, and in case that should be accomplished within the time limited by the two lives mentioned, he authorized them to organize the institution and convey to or apply to its use the rest, residue and remainder of his estate or so much of it as they should deem expedient. Thus far he has in practical effect directed the application to be made for legislative action, and has made no provision for the disposition of the fund other than to the use of the corporation in the event of its creation. And because that was a contingency not within the control of the executors and trustees and for other reasons which might exist at the time of his death to render the endowment of the Tilden Trust, if created, inexpedient, the testator with a view to entire testacy added: "But in case such institution shall not be so incorporated * * * or if for any cause or reason my said executors and trustees shall deem it inexpedient to convey said rest, residue and remainder or any part thereof or to apply the same or any part thereof to the said institution I authorize" them to apply it " or such portion thereof as they may not deem it expedient to apply to its use, to such charitable, educational and scientific purposes as in the judgment of my said executors and trustees will render the said rest, residue and remainder of my property most widely and substantially beneficial to the interests of mankind." This provision, treated independently of any other, requires no consideration. The *cy pres* doctrine available to give effect to trusts for charitable uses without any defined beneficiary in England has no place in the law of this state. The attempt thus made by the testator to provide, in the event mentioned, for a trust dependent upon the selection by the executors and trustees of the charitable, educational and

scientific purposes to which the fund should be applied was ineffectual and void for indefiniteness and uncertainty. (*Prichard* v. *Thompson*, 95 N. Y. 76 ; *Holland* v. *Alcock*, 108 id. 312 ; *Read* v. *Williams*, 125 id. 560.)

The proposition on the part of the appellants is that by the thirty-fifth article the testator made two distinct alternative provisions for the disposition of the residue of his estate ; that the one relating to the incorporation and endowment of the Tilden Trust was primary, and the other following it was ulterior and intended (if that institution was incorporated) to be made effectual in the event only that the executors and trustees deemed it inexpedient to apply such residue, or only a portion of it, to the Tilden Trust. On the contrary, the counsel for the respondents contend that there are no such separate alternative provisions in the article, but that the testator there provided for the disposition by the trustees of his residuary estate to charities, etc., of which the Tilden Trust was one of the objects, and that the power given to the executors and trustees was that of selection merely. In some cases it has seemingly been held that when words of a will expressing a class of beneficiaries or objects of a trust may be taken distributively, and some of them are lawful objects of the trust and others not, it may be effectual as to the former, but the weight of authority is otherwise, and in such case the power of mere selection, in execution of the trust attempted to be so given, is wholly void. ( *Williams* v. *Kershaw*, 5 Cl. & Fin. 111 ; *Vezey* v. *Jamson*, 1 Sim. & Stu. 69 ; *Ellis* v. *Selby*, 1 My. & Craig, 286 ; *Mitford* v. *Reynolds*, 1 Phillips, 190 ; *In re Jarman's Estate*, 8 L. R. [Ch. Div.] 584 ; 25 Moak, 496.)

If that view, as applied to the present case, is supported, the conclusion must follow that the testator failed by his will to make any valid provision for the disposition of his residuary estate. Then the trusts and the power which the testator attempted to create and vest in his executors and trustees would constitute a single scheme for the appropriation of the fund by them to such charitable, educational and scientific pur-

poses as they should choose to select. But a different question is presented if the provision relating to the creation and endowment of the Tilden Trust may be legitimately treated independently of that following it, by which he sought to make provision for such general undefined purposes. Then the effect of the former would not necessarily be embarrassed by any relation to the latter. (*Savage* v. *Burnham*, 17 N. Y. 561; *Schettler* v. *Smith*, 41 id. 328; *Manice* v. *Manice*, 43 id. 303; *Kennedy* v. *Hoy*, 105 id. 134.)

The disposition of this question depends upon the construction to which that article of the will may be entitled, having in view the principles applicable to the interpretation of such instruments.

As has already been seen, the first duty imposed upon the executors was to seek by legislative act the incorporation of the Tilden Trust. And it may be assumed that this was not required or designed as a useless ceremony. When that should be effected, they were authorized to organize the corporation, designate its first trustees and convey to it or apply to its use the residue of his estate, or so much of it as they should deem expedient. We need go no farther to see the purpose for which the Tilden Trust was intended in its relation to the fund. How is the purpose so represented necessarily qualified by any of the provisions following it? There were certain contingencies in view which would have the effect to defeat the execution of the power to endow such an institution, and upon which the limitation of the fund, or some portion of it, to the general, charitable, educational and scientific purposes was provided for. The first was the failure to obtain the incorporation of the Tilden Trust. In that event the testamentary disposition of the residue of the estate was dependent upon such provision for application to charitable, etc., purposes. But if it should be incorporated, the contingency depended upon the determination of the executors and trustees, to the effect that it was expedient to apply a portion only, or inexpedient to apply any part of the fund to that institution. It quite plainly appears that the testator intended that if legisla-

tive action could be effectually had for that purpose, the Tilden Trust should be incorporated, and that being accomplished, its endowment should first be considered and determined; and that in the event only that it should by the trustees be deemed inexpedient to apply to it any of the residue of his estate, or expedient to apply to it less than the whole of such estate, would there be any occasion to seek other charitable, educational or scientific purposes to which to appropriate the fund or any portion of it.

It is urged that, because the gift of the testator is, by the terms of the will, made to the executors and trustees, their power is that of selection, and, consequently, there is no limitation created by the testator, and can be no primary or ulterior gift within the import of the language employed. But gifts may be made by a testator by means of powers vested in trustees to whom the estate is devised and bequeathed, and limitations contingent in character may be dependent upon the execution or non-execution by the trustees of powers conferred upon them. The question whether the provisions for the disposition of the residuary estate are or not alternative, primary and ulterior is one of construction. The fair interpretation of the language of the thirty-fifth article permits, and the evident intent of the testator as there manifested requires the conclusion that the two are alternative provisions, and that they are primary and ulterior. The former is definite in its object, the latter is otherwise.

It is true that by the terms of the thirty-ninth article the testator devised and bequeathed all of his residuary estate to the executors and trustees for the purposes mentioned in the will. This is designated at other places in his will as "general trust" to distinguish the residuary fund from the various special trusts created by the will. But this does not qualify or modify the construction to which the provisions of the thirty-fifth article would otherwise be entitled in the respect we are now considering them. The manner which the fund should be applied was dependent upon contingencies, some of which were within the powers vested in

the executors and trustees. Yet the purpose of the devise and bequest must be considered in reference to the power conferred upon them by the provisions of that article, and in view of the manner which it might by virtue of those provisions be properly executed. The arbitrary exercise of power may characterize the effect which may be given to it, rather than its purpose. So in the present case the executors and trustees could have unfaithfully exercised their discretion upon the question of expediency. But while the test of expediency or inexpediency was left to their discretion, they could not consistently with the intent of the testator, as plainly manifested by his will, have applied any part of the fund to the purposes of the general charity mentioned in such ulterior provision until they had in good faith determined for " some cause or reason " that it was inexpedient to apply it or some and what portion of it to the Tilden Trust.

And although the exercise of discretion may not be subject to judicial control or review, it may be said that for the purpose of interpretation, it is the intent of the donor so made to appear that properly measures the discretionary power of those who are to execute it, and not the opportunity for its unfaithful execution found in its discretionary character. The power vested in the executors and trustees was not that of mere selection of a beneficiary or beneficiaries amongst all the objects which were embraced within the scope and meaning of the thirty-fifth article ; they were not authorized to reach the consideration of the undefined objects of charity, etc., there referred to for the purpose of selection from them until they had disposed of the question whether the specific beneficiary, the Tilden Trust, should or not be endowed. That was the definite object to which their attention was first to be directed, and the question of the application to it of the fund to be determined. This the trustees were to do before any matter of selection from amongst indefinite charities was reached. The scope of the inquiry for that purpose was to be extended to other objects " if for any cause or reason " they

should deem it inexpedient to apply any part of the residuary fund or expedient to apply less than the whole of it to the Tilden Trust and not otherwise. This seems to have been the purpose the testator had in view as appears by the provisions of that article. This is not repugnant to any other provision of the will. And his intent as manifested by the language used must be effectuated if it can be consistently with the rules of law. (*Smith* v. *Bell*, 6 Peters, 68; *Wager* v. *Wager*, 96 N. Y. 164; *Roe* v. *Vingut*, 117 id. 204.)

The provision for the Tilden Trust must, therefore, be treated as primary and distinct from that for general charities, etc. And the question whether or not the former provision was effectually made remains to be considered. It is requisite to the validity of any provision of a will that it is or may become capable of lawful execution; and that test is applicable as of the time of the death of testator. There may be future contingencies provided for upon which gifts are made to depend; and beneficiaries may not be definitely known or ascertained at the time of the testator's death. It is sufficient that they are so described as to be ascertained in the future when the right accrues to receive the gift. (*Holmes* v. *Mead*, 52 N. Y. 332; *Shipman* v. *Rollins*, 98 id. 311.) And a devise or bequest may be limited to a corporation not in existence at the time of the death of the testator, provided it is created within the time allowed for vesting of future estates. This question was considered in *Inglis* v. *Sailors' Snug Harbour* (3 Peters, 99), *Ould* v. *Washington Hospital* (95 U. S. 303), and in this state it was so determined in *Burrill* v. *Boardman* (43 N. Y. 254), and reaffirmed in *Shipman* v. *Rollins* (98 N. Y. 328). In the *Burrill* case it was treated as in the nature of an executory devise dependent upon incorporation of the institution there contemplated, and it was held that the estate vested on the occurrence of that event. In that respect that case is distinguishable from the present one, as in the latter it was contemplated that the vesting should depend upon the conveyance to the Tilden Trust or application

to its use by the executors and trustees to whom by the terms of the will the residuary estate was devised and bequeathed. This distinction arises out of the fact that upon the contingency which enabled the institution in the *Burrill* case to take the fund, the trust upon which the trustees held it terminated and there was no opportunity remaining for any limitation over, while it was otherwise in the case at bar. But treating the provisions of the thirty-fifth and thirty-ninth articles of the will as creating a trust power, it is not seen that the fact that the estate did not vest in the corporation on its creation necessarily has of itself any essential importance for the purpose of the question now under consideration provided the power was adequately given to convey or apply it to the use of the institution. While it could not in that case be deemed what was formerly known as an executory devise, it might in behalf of the Tilden Trust be treated as a conditional limitation of the estate, or a power dependent for its execution upon a condition. The testator evidently intended to vest in the executors and trustees all the control he could of the title to his residuary estate. But it cannot for the purposes of the question here be assumed that he intended their relation to it should be other than the legal effect of that which they took by the will. As to the realty no title passed to the trustees and no trust within the statute was created. When by the statute express trusts were reduced to those for the execution of which taking of the title was deemed essential (1 R. S. 728, § 55), it took from others none of the elements of trusts other than such as were dependent upon the title as formerly taken by trustees and none of the powers of execution not so dependent. And it was provided that when an express trust should thereafter be created for purposes other than those enumerated in section 55 no title should vest in the trustees, but if the trust directed or authorized the performance of any act which might lawfully be performed under a power it should be valid as a power in trust. (Id. 729, § 58.) If, therefore, the provisions of the thirty-fifth article of the will would, but for the statute have constituted a trust, and authorized the performance of any act

which might lawfully be performed as such they, so far as related to the real property in the residuary estate of the testator, created a power in trust. And although the larger part of such estate was personalty and the trust as to that is not subject to the statute, the distinction in that respect for the purposes of the questions requiring consideration, need not be observed as the subject of powers is substantially applicable alike to both. (*Cutting* v. *Cutting*, 86 N. Y. 522; *Hutton* v. *Benkard*, 92 id. 295.)

It is urged that by the provisions in question the testator neither directed or authorized the performance of any act of disposition of the residuary estate which could lawfully be performed within the meaning of a statute defining a power in trust; and that there was not only no party to effectually demand their execution, but they had no enforceable character. It is true the creation of a trust depends upon the nature of the provisions by which its creation is sought. It is also the rule that a trust is imperative, and at common law the same rule is applicable to a power coupled with a trust although otherwise as to a naked power. (2 Story Eq. Jur. § 1061.) The primary one of those provisions certainly was not enforceable at the time of the death of the testator. There was then no Tilden Trust, and its then future existence was contingent. When it was created its ability to take depended upon its incorporation being in form and manner satisfactory to the executors and trustees, and that being so, it was made discretionary with them whether the institution should have the whole or any and what portion of the residuary fund. It would, therefore, seem to follow that upon the incorporation of the Tilden Trust it could not, without action of the trustees, have enforced conveyance or application to it or the fund or any portion of it. In that view and upon the construction given to the thirty-fifth article, the question is whether the trustees were enabled to vest the fund in the Tilden Trust, or by the exercise of the discretionary power given to them, could have afforded to that institution the right to demand and enforce in that respect the execution of the provision of the

will in its behalf.   As already seen, the testator did not intend
to ˋdie intestate as to any portion of his property, and that he·
did intend to impose upon his executors and trustees the·
imperative trust power for the disposition of his residuary
estate, appears by the provisions of the thirty-ninth article, by
which he directed them "to apply the same and the proceeds·
thereof to the objects and purposes mentioned" in the will.
This is borne out by the terms of the thirty-fifth article by
imputing to him the understanding that the secondary pro-
vision of that article was valid, as upon the contingency there·
mentioned he provided for the disposition of it.   If the primary
provision was of itself valid in its object, purpose and effect, it
was not invalidated by the fact that the trustees were in terms.
in the event stated in the article, empowered to apply the fund
to the indefinite purposes mentioned in the ulterior provision
for which testamentary disposition of property could not law-
fully be made.   (*Attorney-General* v. *Lonsdale,* 1 Sim. 105 ;
*Salusbury* v. *Denton,* 3 Kay & J. 529 ; *Carter* v. *Green,* id。
591.)

In other words, the limitation to the indefinite objects did
not deny to the former provision for the Tilden Trust the·
effect to which it otherwise may have been entitled.   (*Sav-
age* v. *Burnham,* 17 N. Y. 561 ; *Kennedy* v. *Hoy,* 105 id。
134.)

In such case the subject would be within the control of the·
court, and on proper application it would restrain the use of
power for such unlawful purpose.   The contention of the·
respondents' counsel is that it was essential to the validity of
the provision in behalf of the Tilden Trust that the residuary
estate should have vested in it at the time it came into corpor-
ate existence, or that the institution should then have been
entitled to demand and enforce by decree of the court the·
conveyance to it or the application to its use of the fund by the·
trustees.   This proposition (upon the construction here given
to the provisions in question) in effect seems to be that a trust
or trust power could not exist with or survive the intervention
of the discretionary power which the testator intended to·

give the trustees. But it may be observed that while a valid trust is imperative, attending it may be powers upon which limitations and executory bequests may be contingent, and the exercise of those powers may be discretionary. (*Hawley* v. *James*, 5 Paige, 318, 468; 16 Wend. 61, 176; *Mason* v. *Jones*, 4 Sandf. Ch. 623; 13 Barb. 461; *Costabadie* v. *Costabadie*, 6 Hare, 410; *French* v. *Davidson*, 3 Madd. 396; *Walker* v. *Walker*, 5 id. 424; *Cole* v. *Wade*, 16 Ves. 27.)

It is very likely that if the testator had apprehended the invalidity of the ulterior provision of the thirty-fifth article he would have provided a different limitation in the event there mentioned. But it cannot be assumed that the primary provision for the appointment and disposition of the residuary estate to the Tilden Trust would have been other than that which he made. The efficiency of the power given by this provision is not dependent upon the character of the ultimate limitation, nor is it less effectual than it would have been if that had been to a lawful object of testamentary gift. The difference is that in the one case it was within the power of the trustees to defeat the disposition by the will of the residuary estate, and in the other they could not. But in the latter case they, by the execution of the discretionary power, could have rendered the ultimate provision ineffectual, and for the purposes of the disposition of the fund inoperative. And, therefore, unless the contingency arose upon which the ultimate limitation of it was dependent, it would not be important for any practical purpose whether it was valid or not, and in that event only, would an enforceable character of the trust or trust power be essential to effectuate the intent of the testator. His purpose, it must be assumed in view of the power given, would be accomplished by the disposition to the incorporated institution designated by him. The creation of this power in nature and purpose was lawful, and through its execution the gift to the Tilden Trust could legitimately be effected, although in respect to the appointment to that institution it was made dependent upon the will of the executors and trustees. While

it is essential to a trust as such that it be imperative and, there-
fore, enforceable by decree in equity when the time arrives for
its execution, it is not so of a mere power or necessarily so of
a trust power, although the latter is imperative unless its exe-
cution or non-execution is made expressly to depend upon the
will of the grantee or donee. The testator intended to make
the execution of the power of appointment to the Tilden Trust
dependent upon the will of the trustees as expressly appears
by the provision creating it. The contention, therefore, that
this power of the primary provision was invalid because its
execution was not judicially enforceable in equity on behalf of
that institution does not in the view taken seem to be main-
tained. The imperative character intended by the testator to
be made applicable and in a certain event to be applied to the
disposition of the residuary estate, had relation to the ultimate
limitation, which was dependent upon the contingency that
the trustees should deem it inexpedient to appoint to the
Tilden Trust any or only a portion of such fund. And as
such limitation was invalid for indefiniteness and uncertainty
in its object, the testator failed by it to effectually make any
imperative provision for the disposition of the residuary estate
by means of a trust, power in trust or trust power enforceable
as such except so far as should be necessary to make and keep
good the special trusts as directed.

And as the will furnished no support for an ultimate limita-
tion of the fund in the event the trustees should have deemed
the execution of the power of appointment to the Tilden
Trust inexpedient, the real property within the residuary
estate descended to the heirs of the testator subject to the exe-
cution of the power of appointment and disposition to that
institution, and the right of his next of kin to the administra-
tion in their behalf of the personalty of such estate was sub-
ject to the execution of the same power.

Now, by reference again to the provisions of the thirty-fifth
article, it may be seen, as plainly appears by their terms, that
the testator intended that the trustees should exercise the
power conferred upon them to consummate the disposition of

the residuary estate for the declared purposes of the trust. If they were successful in their effort to obtain the corporate charter it was their duty to determine whether it was satisfactory, and in the event it was so, then, unless they deemed it inexpedient to apply any part of the fund to the Tilden Trust, the further duty was imposed upon them to determine whether it should take all of it and if not all, to appoint the amount of it so to be appropriated. It is apparent that the testator intended to make the exercise of such power a duty and essentially so to carry out his declared purpose. The discretion which he evidently intended to give the trustees related not to the execution of the power, but only to the manner of its execution. In that view (which seems well supported) may not the limitation to the Tilden Trust have been lawfully conditional not only on its incorporation, but as well upon the manner such preliminary power, discretionary only in that respect, should be executed.

In *Ould* v. *Washington Hospital* (95 U. S. 303), the estate for the purposes of the trust was devised to trustees with a view to the incorporation after the death of the testator of an institution to which they, in that event, were to convey the estate provided the corporation was approved by them, otherwise not. The hospital was incorporated and conveyance made to it by the trustees. The validity of the trust was contested, and the court held that the provision relating to a conveyance upon the creation of a corporation approved by the trustees was a conditional limitation of the estate vested in them. In that was involved the discretionary power of the trustees relating to the approval of the corporation. It is essential that the object and subject of a testamentary dispositional provision be definite and when so designated that they are or may become such and properly be ascertained, a limitation may by the testator be made to depend upon a future condition having regard to the statute of perpetuities, and such condition may consist of a power resting in the discretion of a trustee provided for and defined by the will; and when the condition is fulfilled the limitation may be enforced.

The doctrine of the common law on the subject of powers of appointment and selection, except so far as it permitted the treatment of them as illusory, is consistent with the statute relating to powers, which provides that " a · power is an authority to do some act in relation to lands, or the creation of estates therein, or of charges thereon, which the owner, granting or reserving such power, might himself lawfully perform." (1 R. S. 732, § 74.)   The powers now under consideration are a special power, and a special power in trust which, as defined by the statute, are those where the persons, or class of persons, to whom the disposition of lands is to be made under the power are designated (Id. § 78); and " (1) when the disposition which it authorizes is limited to be made to any person or class of persons other than the grantee of such power, entitled to the proceeds, or any portion of the proceeds or other benefit to result from the execution of the power; (2) when any person or class of persons other than the grantee is designated as entitled to any benefit from the disposition or charge authorized by the power."   (Id. 734, § 95.)

The provisions of the thirty-fifth article of the will *in terms*, in view of those of the thirty-ninth article, created a special power in trust; and because the testator intended that his residuary estate should be disposed of as directed by his will for the purposes of the trusts there mentioned, the provisions were apparently imperative; such, at all events, would have been their effect if the ulterior disposition to which the estate was conditionally limited had been valid.

And the statute provides that " every trust power, unless its execution or non-execution is made expressly to depend on the will of the grantee, is imperative and imposes a duty on the grantee, the performance of which may be compelled in equity, for the benefit of the parties interested." (Id. 734, § 96.) The ultimate limitation was by the terms of the will imperative in the event that the trustees failed for any cause to dispose of the fund under the primary one, which alone was made dependent upon their discretionary power.   The Tilden Trust could take only through the power in the nature of that

of appointment vested in the trustees; and the fact that the exercise of that power was discretionary and could not be enforced, produced no legal infirmity in the provision relating to that institution, its ability to take, and to the limitation to it dependent upon such appointment. (*Chatteris* v. *Young*, 6 Madd. 30; *Lancashire* v. *Lancashire*, 1 DeG. & Sm. 288; 2 Phillips, 657; *Cole* v. *Wade*, 16 Ves. 27; Perry on Trusts, § 508; Hill on Trustees, 490–492.)

So far as the statute relates to the subject of the power of appointment, it provides that where under a power a disposition is directed to be made amongst several designated persons without specification of the share to be allotted to each, all of them shall be entitled in equal proportion. (1 R. S. 734, § 98.) But when the terms of the power import that the fund is to be distributed between them in such manner or proportions as the trustee may think proper, he may allot the whole to any one or more of such persons in exclusion of the other. (Id. § 99.) The trust power in such case does not cease to be imperative. (Id. § 97.) And if the trustee having such power shall die leaving it unexecuted, its execution shall be decreed in equity for the benefit equally of all the persons so designated. (Id. § 100.) These provisions of the statute are in that respect substantially declaratory of the common law. (*Swift* v. *Gregson*, 1 T. R. 432.) It was there, as it is by our statute, a trust power. And it is not important for the purposes of the question whether the designated persons are vested with the fund subject to the execution of the power, or take by reason of the power given. In the one case there is a gift expressed and in the other implied, which will be executed by decree of the court in default of execution of the power by the donee of it. (1 Perry on Trusts, § 250; *Walsh* v. *Wallinger*, 2 Russ. & Myl. 78; *Lees* v. *Whiteley*, L. R. [2 Eq.] 143.)

No such implication arises where there is a limitation over of the estate or fund to other objects in default of the execution of the power by the donee; and in that case the objects of the power take nothing as their beneficial interest, or the limitation to them is wholly dependent upon the execution of

the power by him. (*Davidson* v. *Proctor*, 19 L. J. [N. S. Ch.] 395; 14 Jur. 31; *Pearce* v. *Vincent*, 2 Myl. & K. 800; 2 Bing. [N. C.] 328; 2 Keen, 230; *Goldring* v. *Inwood*, 3 Giffard, 139.) And although the power of appointment and selection rests in the discretion of the trustee, it is valid and may be effectually executed by him. (2 Perry on Trusts, § 508; *Brown* v. *Higgs*, 8 Ves. 561.)

In the present case the provision relating to the Tilden Trust conferred upon the trustees a power of appointment and disposition to a definite object with a limitation over on default of such appointment; and so far as by the terms of such provision the execution of the power was left to the judgment or discretion of the trustees, it was expressly made to depend on their will within the meaning of the statute. And as before remarked, the apparent purpose and effect of this provision was not qualified or defeated by the fact that the ultimate limitation was to objects so indefinite as to render it ineffectual. In practical effect it was the same as if the fund had been limited over to the heirs and next of kin of the testator as they necessarily would take in default of the execution of the power.

In *Power* v. *Cassidy* (79 N. Y. 602) the fund was bequeathed to the executors with power of appointment and selection among a designated class of beneficiaries. While the manner of executing it was discretionary the trust or trust power was imperative, and on default of the executors to execute it the power would survive them, and the designated objects would then and ultimately be entitled to share equally in the fund and it would be enforced accordingly. But as to those beneficiaries it would not in that sense and for that purpose have been imperative if there had been a limitation over to other objects on such default, although as to the latter it would have retained its imperative character. Yet the power thus given of appointment would have been valid and may have been effectually executed.

It is essential to the constitution of a valid trust or special power in trust by a testator that the objects be so designated

or described that they may be definitely known or ascertained from the provisions of his will. And it was the failure of the testators to so designate or define the objects of the attempted trusts which came to the attention of the court and were for that reason held invalid in *Prichard* v. *Thompson* (95 N. Y. 76); *Holland* v. *Alcock* (108 id. 312); *Read* v. *Williams*, (125 id. 560). In those cases the trust power sought to be given was that of appointment and selection without limitation over. The infirmity which rendered invalid the provisions of the wills in question in those cases was that no beneficiary was designated or pointed out by or ascertainable from the will having any interest in the execution of the power or who could assert in court any claim founded upon the trust. Those provisions of the wills were, therefore, held invalid for indefiniteness of the classes of objects of the trusts sought to be created. And in this respect they were distinguished from *Power* v. *Cassidy.* The present case is distinguishable from them in like manner, and further that the power given by the primary provision in question was not that of appointment and selection among members of a class, but was of appointment and disposition to a definitely designated beneficiary. It is also essential that the subject of the power be designated and certain or that the means be provided by the will to render it properly ascertainable or certain. The provision of the power in that respect is for the application to the Tilden Trust of the residue of the estate or so much of it as the trustees should deem expedient. The cases before cited recognizing as effectual discretionary power given to trustees to regulate, control or determine the amount which certain beneficiaries should receive of specific funds, to be exercised in reference to circumstances which the donors of the power had in view, have some bearing upon this question. Those are the *Hawley, Mason, Costabadie, French, Walker* and *Cole* cases (*supra*).

The residuary estate was a definite fund, and unless the trustees determined that it was inexpedient to endow the Tilden Trust, they were at liberty to apply to it the entire

fund, but whether expedient to so apply all or less than the whole of it was a matter of judgment of the trustees to be founded upon the amount of the residue in reference to the sum suitably available for the purpose of the institution, and that was the amount the testator authorized the trustees to appoint to the institution. This was the means provided by the will to make certain that which until such action by the trustees was uncertain.

In *Peck* v. *Halsey* (2 P. Wms. 387) it was held that a bequest by the testatrix of *some* of her best linen to A. was void for uncertainty, but that a bequest of *such* of her best linen as the executor should think fit or as the legatee should choose, would have been good.

In *Kennedy* v. *Kennedy* (10 Hare, 438) the testator gave all his household furniture, etc., to trustees and directed that all his household property be sold by them except such articles as his wife should desire to retain and which he authorized her to appropriate to her own use. Held, that the power of selection was effectually given to the wife. And *Arthur* v. *Mackinnon* (L. R. [11 Ch..Div.] 385) is to the same effect. It has been seen by reference to the statute that the power of appropriation of a fund among the members of a class may be created and the donee of the power be authorized in his discretion to appropriate it in such proportions as he may please. This was so at common law. When the fund is definitely designated it would seem that power may be conferred upon the donee of the power to determine what portion of it may be appointed to a definite beneficiary designated by the donor.

Our attention has been called to no authority to the contrary of that proposition in its application to the present case. The *Prichard*, *Holland* and *Read* cases do not have any necessary application to the question. The reasoning there was had in reference to their contexts to which it was very apt. And the relief of the provision relating to the Tilden Trust from the alternative ulterior provision which embraces only indefinite objects, denies to those cases any practical application to the questions presented in the case at bar.

While the statute abolished powers as they before then existed (1 R. S. 732, § 73) it, as said by Judge ANDREWS in *Read* v. *Williams*, " does not define all the purposes for which a power over property may be created." This appears by section 74, before referred to and by the revisors' notes (3 R. S. [2d ed.] 590), as to powers other than those which are designated as beneficial. They, except as there enumerated, were abrogated by the statute. (1 R. S. 733, § 92.) Treating that in question as a trust power, those considerations of the statute may not be essentially important here. It must be assumed that the testator, through powers conferred on his trustees by the thirty-fifth article, intended to dispose of his entire residuary estate and, therefore, its ultimate dispositional provision (in view of article thirty-nine) was intended, as by its terms it purported to be imperative, but that character was not unconditionally applicable to the power of appointment and disposition in the primary provision relating to the Tilden Trust. It had relation to the limitation over to the objects of the ulterior provision, and in consequence of the invalidity of the latter his intention, if the trustees had failed to appoint the Tilden Trust as the beneficiary, would have been disappointed. The purpose of the appointment and disposition to that institution is apparently legal and, at common law, may have lawfully been accomplished through the execution of a power in the manner the testator sought by his will to do it. It also fairly comes within the purposes for which a power as defined by the statute may be employed. (Id. § 74.) At common law a trust may have been attended with a discretionary power, upon the non-execution of which the enforceable character of its ultimate limitation might be dependent. This relation of powers, to which trusts may have been subjected, was preserved and provided for by the statute. And while a trust power is in its nature imperative, that character of it in the sense of being enforceable may, when its execution or non-execution is made expressly to depend upon the will of the donee, be suspended by and during the existence of such discretionary power or determined by its execution. In the

present case there was involved in the provision for the Tilden Trust a power in its terms discretionary, and so far as it was so, its execution or non-execution was made expressly to depend on the will of the trustees, and the purpose being lawful it was valid unless in contravention of the statute against perpetuities. It is urged that the limitation provided for by the thirty-fifth article of the will would permit the unlawful suspension of the absolute power of alienation of the realty and of the absolute ownership of the personal property constituting the residuary estate of the testator. (1 R. S. 723, § 15; Id. 773, § 1.) This would be so and its effect the invalidity of the limitation if such suspension would not, by the terms of the will, necessarily terminate within a period not longer than the continuance of the life of the survivor of the two persons there designated. (*Schettler* v. *Smith*, 41 N. Y. 328.) But the thirty-fifth article must be construed in connection with the thirty-ninth article, and by the latter the testator directed that the executors and trustees "possess, hold, manage and take care" of the residuary estate during a period not exceeding such two lives. This, in view of the further direction that they apply such estate to the objects and purposes mentioned in the will, which was imperative, is not consistent with the suspension of the absolute power of alienation of the real estate and of the absolute ownership of the personal property beyond that period. It, therefore, seems that the future estates sought to be created by the testator were so limited that by the terms of those provisions they would necessarily and beyond any contingency have terminated within the period prescribed for that purpose by the statute, and in that respect they may be upheld.

These views lead to the conclusion that the provisions of the will relating to the Tilden Trust and the powers for their execution given to the executors and trustees were valid, and as the consequence the main purpose of the action must fail.

Since the commencement of the action, and upon the application of the executors and trustees, a Tilden Trust has been incorporated in form and manner satisfactory to them and

Dissenting opinion, per BRADLEY, J.

organized. They determined to endow it with the entire residuary estate, and made to the institution conveyance and transfer accordingly, subject to provisions contingently made in the will by the testator in behalf of special trusts by him created and as there directed.

It is insisted that the act of incorporation is not such as was intended by the testator, in that it was not given the corporate capacity designed by him. By the will he requested them to obtain " an act of incorporation of an institution to be known as the Tilden Trust, with capacity to establish and maintain a free library and reading-room in the city of New York and to promote such scientific and educational objects as my said executors and trustees may more particularly designate. Such corporation shall have not less than five trustees, with power to fill vacancies in their number, and in case said institution be incorporated * * * I hereby authorize my said executors and trustees to organize the said corporation, designate the first trustees thereof," etc. In the preamble of the act of incorporation it is stated that the " executors and trustees deem it inexpedient to designate any purposes of the corporation * * * other than the establishment and maintenance of a free library and reading-room in the city of New York in accordance with the purpose and intention of the said testator," and such was the capacity given by the act to the corporation. The first section provided that the three persons (naming them), who were the executors and trustees, and such other persons as they should associate with themselves and their successors, were created a body corporate under the name and title of the Tilden Trust; and by the second section it was provided that those three persons should be permanent trustees of such corporation, and that they designate and appoint other trustees so that the number should not be less than five.

The testator seems to have had in view only one definite purpose of the corporation. That he expressed. Beyond the establishment and maintenance of a free library and reading-room he contemplated that the promotion of some further

scientific and educational objects might suitably and properly be added and sustained. He, therefore, provided that the corporate capacity be adapted to such objects in that respect as the executors and trustees should designate. This, however, would be dependent upon circumstances to be determined by them and he left it to their discretion. He evidently did not intend that the corporation, for the purpose by him definitely appointed, should be frustrated by the failure of the executors and trustees to exercise their discretion in such manner as to give occasion to amplify the corporate capacity of the institution. The question whether, after the creation of the corporation for the free library and reading-room, the executors and trustees may by the designation of such further objects authorize the enlargement of its capacity accordingly, does not now arise and is not considered.

We think the incorporation was not invalidated by the manner the capacity of the institution was defined in the act.

When the plaintiff commenced this action it may have had support in the invalidity of the ulterior provision of the thirty-fifth article of the will to prevent the application of any portion of the estate to the indefinite objects and purposes there mentioned. But as the executors and trustees afterwards made a determination which would prevent the application of any part of the fund to those objects and purposes no relief in that respect is now essential, and the only purpose for which further consideration need be given to that subject has relation to the question of costs which we think should, on behalf of the several parties, be chargeable to the estate of the testator.

The judgments of the court below should, therefore, be reversed and the complaint dismissed with costs in that and this court to all the parties, appellants and respondents, payable out of the estate.

All concur with BROWN, J., except POTTER and VANN, JJ., who concur with BRADLEY, J.

Judgment affirmed.